BYRON L. SMITH, Receiver,

*v.*

THE UNITED STATES EXPRESS COMPANY *et al.*

*Filed at Ottawa October 31, 1890.*

1. RECEIVERS—*right to sue and defend in the name of the debtor.* A receiver of an insolvent bank may properly prosecute or defend actions in the name of the bank, when there is a question whether he is clothed with the legal title to the property of the bank, for want of a written assignment by the bank officers.

2. SAME—*defending attachment suit—giving bond for release of property—waiver of right to enjoin collection under the attachment.* A receiver appointed in this State, by defending attachment suits brought in another State against the debtor, and giving a bond for the release to him of the attached property, waives his right to enjoin the prosecution of the attachment suits, and can not afterward obtain a decree or order enjoining the creditors in the attachments from collecting their judgments by action on the bond, and it will be error for the court appointing the receiver to enjoin the collection of the attachment judgments.

3. SAME—*acts not directed by the court—ratification.* The want of an order of court directing a receiver to bring a suit, or to defend one brought against the party he represents, is material only on the question whether the receiver shall be allowed expenses and costs, and the court may ratify his action in suing or defending, and the disposition of the fruits of his litigation by the court will amount to a ratification.

4. ATTACHMENT—*giving bond for release of property—admission as to liability to the attachment.* Where property attached is released on the giving of a bond by the defendant in the attachment, this will amount to an admission by the defendant that the plaintiff in the attachment would have been entitled to resort to the property attached, if it had not been released. The bond takes the place of the property attached, and a liability on the bond arises for whatever judgment may be recovered.

5. FORMER ADJUDICATION—*whether conclusive—as to one not a party.* A former adjudication is sometimes binding upon persons who are not parties to the record. One in whose behalf or under whose direction a suit is prosecuted or defended, will be barred by the judgment or decree rendered in it, and parol evidence will be admitted to show who is the real party in interest, and that such person conducted the litigation in the name of another person.

6. So where a receiver of an insolvent bank employed counsel to defend attachment suits in another State against the bank, and they were defended by the receiver in the name of the bank, it was *held*, that the receiver was barred by the judgment of the foreign court in such suits, the same as if he had defended in his own name.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. WALKER & EDDY for the appellant:

The order of the court below may be enforced against the United States Express Company, or any corporation, through any of its agents or representatives who are within the jurisdiction of the court. *People* v. *Railroad Co.* 14 Abb. Pr. 171.

A receiver has no extra-territorial jurisdiction or power of official action, and can not go into a foreign State or jurisdiction and there institute a suit for the recovery of demands due the person or estate subject to his receivership. *Booth* v. *Clark,* 17 How. 322; High on Receivers, sec. 239; *Insurance Co.* v. *Needles,* 52 Mo. 17; *Insurance Co.* v. *Taylor,* 2 Rob. 278; *Graydon* v. *Church,* 7 Mich. 36; *Hoyt* v. *Thompson,* 5 N. Y. 320; *Willits* v. *Waite,* 25 N. Y. 577; *Warner* v. *Jaffray,* 96 id. 248; *Hunt* v. *Insurance Co.* 14 Allen, 353; *Rhawn* v. *Pearce,* 110 Ill. 350.

A receiver has no power except such as the court gives him, and his acts outside of the scope of his orders entered by the court, are done at his peril. High on Receivers, secs. 1, 2; *Hunt* v. *Wolfe,* 2 Daly, 303; *Devendorf* v. *Dickinson,* 21 How. Pr. 275; *Corey* v. *Long,* 43 id. 497; *Battle* v. *Davis,* 66 N. C. 252; *Hooper* v. *Winston,* 24 Ill. 353; *Kaiser* v. *Kellar,* 21 Iowa, 25.

If a receiver institutes an action in the name of a third person, without his authority, he may be enjoined. *In re Merritt,* 5 Paige, 125.

To institute any action connected with his trust he must apply to the court for leave and an order, even though the

order appointing him, in general terms, authorizes him to sue for and collect assets. High on Receivers, 208; *Wynn* v. *Lord Newborough*, 3 Bro. C. C. 88; *Green* v. *Winter*, 1 Johns. Ch. 60; *Battle* v. *Davis*, 66 N. C. 252.

The foundation of the rule is, that it is always for the court itself to determine whether it shall be dragged into litigation. *Screven* v. *Clark*, 48 Ga. 41.

In the case of actions against the estate over which a receiver is appointed, he has no *status* in court, and can not appear or take any action in the cause until he has applied to the court appointing him to become a party, and an order is entered. *Tracy* v. *First Nat. Bank*, 37 N. Y. 523.

It follows, therefore, that whatever the receiver in this case did in New York without the order of the court appointing him, he did as an individual, and did not bind or estop the court. Nor should the appellees be permitted to urge his unauthorized action there as a defense to their contempt here, since they were in nowise prejudiced by the appearance of the Trader's Bank being entered and bonds filed.

Courts may restrain, by injunction, parties within their jurisdiction from prosecuting suits at law, either in the courts of their own State or in the courts of other States, against property of persons within the jurisdiction of the court. High on Injunctions, (2d ed.) secs. 103-107; Rorer on Inter-State Law, 42-44; Story's Eq. Jur. (10th ed.) secs. 899, 900.

This is not by way of interference with the course of proceedings or jurisdiction of courts of other States, (for to this end a court has no power,) but upon the principle that courts of equity have full power over persons within their jurisdiction and amenable to their process to restrain them from proceedings, either within or without the State, which are wrongful toward other residents, and therefore contrary to equity and good conscience; and the operation of the court of equity being strictly *in personam*, it is entirely immaterial at what stage the proceedings at law may be,—whether just instituted, or

at judgment.   High on Injunctions, (2d ed.) secs. 103-107; *Dehon* v. *Foster*, 4 Allen, 545 ; *Keyser* v. *Rice*, 47 Md. 203 ; *Cole* v. *Young*, 24 Kan. 435 ; *Manufacturing Co.* v. *Worster*, 23 N. H. 470 ; *Chaffee* v. *Quidnick*, 13 R. I. 442 ; *Bank* v. *Railroad Co.* 28 Vt. 476 ; *Railroad Co.* v. *Railroad Co.* 46 id. 792 ; *Dinsmore* v. *Neresheimer*, 32 Hun, 204 ; *Claflin* v. *Harlin*, 62 How. Pr. 284 ; *Hendee* v. *Railroad Co.* 26 Fed. Rep. 677 ; *Vail* v. *Knapp*, 49 Barb. 299.

Mr. James Frake, and Mr. James L. High, for the United States Express Company :

· The receiver has no extra-territorial functions or rights of action.   His title being acquired under proceedings *in invitum*, against the bank, his functions and rights of action are limited to the jurisdiction of the court appointing him.   He is recognized in the courts of other States, if at all, only as a matter of comity, and has no title which can be enforced in such courts, as against citizens of such States, or creditors proceeding there against the property or funds of the insolvent debtor.   *Booth* v. *Clark*, 17 How. 322 ; *Hoyt* v. *Thompson*, 5 N. Y. 320 ; *Willits* v. *Waite*, 25 id. 577 ; *Warner* v. *Jaffray*, 96 id. 248 ; *Insurance Co.* v. *Taylor*, 2 Rob. 278 ; *Hunt* v. *Insurance Co.* 55 Me. 290 ; *Taylor* v. *Insurance Co.* 14 Allen, 353 ; *Rhawn* v. *Pearce*, 110 Ill. 350 ; *Hazard* v. *Durant*, 19 Fed. Rep. 471 ; *Brigham* v. *Luddington*, 12 Blatchf. 237.

The receiver, as the successor in interest of the Trader's Bank, has no other right to the fund in New York than such as might have been asserted by the bank.   The judgment in attachment in favor of Platt, and against the bank, establishes the right of Platt to recover the fund in question.   The receiver having employed counsel, who appeared and defended the attachment suit, the judgment in that suit is *res judicata* as against the receiver, although not a formal party to the record. ' Being a party in interest, and having employed counsel in defense of the suit, he is as conclusively estopped by the judg-

ment as if he had been a party to the record.   Freeman on Judgments, sec. 174; 2 Smith's Lead. Cas. 801; Herman on Estoppel, sec. 147; *Chamberlin* v. *Preble,* 11 Allen, 370; *Craig* v. *Ward,* 36 Barb. 377; *Stoddard* v. *Thompson,* 31 Iowa, 80; *Rogers* v. *Haines,* 3 Greenl. 362; *Estelle* v. *Peacock,* 48 Mich. 469; *Tarleton* v. *Johnson,* 25 Ala. 300; *Bachelder* v. *Brown,* 47 Mich. 366; *Castle* v. *Noyes,* 14 N. Y. 329; *Doty* v. *Brown,* 4 id. 71; *Ehle* v. *Bingham,* 7 Barb. 494.

The receiver having, under the order of the Superior Court of Cook county, procured the giving of the bond by the American Surety Company, conditioned for the payment of whatever judgment might be recovered in the attachment suit, that bond is, in effect, the bond of the Superior Court.   Both the receiver and the court are therefore estopped from questioning its validity, or the right of the express company to retain the money paid to it by the surety company, under the bond which the receiver and the Superior Court had caused to be executed for that purpose.

Full faith and credit should be given in Illinois to the judgment recovered in the attachment suit in favor of appellant in the Supreme Court of New York.   That judgment being conclusive in the State of New York upon the right of appellant to the fund in controversy, is, under the constitution and laws of the United States, entitled to the same credit in all other States of the Union.   U. S. Const. art. 4, sec. 1; U. S. Rev. Stat. sec. 905; *Mills* v. *Duryee,* 7 Cranch, 481; *Christmas* v. *Russell,* 5 Wall. 290; *Green* v. *Van Buskirk,* 7 id. 139; *Warner* v. *Jaffray,* 96 N. Y. 248.

Mr. E. A. Otis, for the other appellees.

Mr. Justice Magruder delivered the opinion of the Court:

In a proceeding instituted in the Superior Court of Cook County by Thomas P. Tallman, the cashier of and a stockholder in the Trader's Bank of Chicago, a corporation organized under

the laws of Illinois, Byron L. Smith, the appellant herein, was appointed receiver of said bank on October 3, 1888. By the orders of the court he was clothed with the usual powers of a receiver, and "empowered to institute suits in law or equity for the recovery of any assets, claims, choses in action justly belonging to or due said Trader's Bank."

On October 29, 1888, Smith, as receiver, filed his petition in said proceeding, praying that an order be entered requiring Charles C. Boyle (individually), Charles C. Boyle, as guardian of Mary E. Gossage and Margaret G. Gossage, minors, the Merchants' National Bank of Chicago and the United States Express Company, all of whom are appellees herein, "to stay and discontinue all proceedings under (the) writs of attachment and in (the) suits (hereinafter) described, and to release all moneys, property and assets heretofore attached by them as belonging to * * * said Trader's Bank of Chicago, and requiring them to immediately pay over to petitioner any moneys or assets, which they have received or may receive either directly or indirectly from the proceedings and suits (so) instituted;" and further praying, that said parties "may be enjoined from further interfering with petitioner as receiver and the property and assets to which (he) is entitled * * * ; and that a rule be entered requiring them and each of them to show cause why an order should not be entered in said cause punishing *  *  *   each of them for contempt," and for other relief.

The material facts set up in the petition and answers thereto are as follows: When the receiver was appointed, funds amounting to about $25,000.00 and belonging to the Trader's Bank, were on deposit with the Seaboard National Bank, the Tradesmen's National Bank and the Continental National Bank of New York City. At the time of its failure, the Trader's Bank owed Boyle individually $1014.45; Boyle, as guardian, $15,692.82; the Merchants' National Bank $1800.00; the United States Express Company, for itself and as assignee of one Crosby, $8860.21. Boyle, the Merchants' National Bank

and Crosby were residents of Chicago, Illinois, and the United States Express Company, though an association organized under the laws of New York, did business in Chicago and had an office there under the control of its vice-president and manager.

In the early part of October, 1888, Boyle assigned his individual claim to William O. Jaquette and his claim as guardian to William K. Kitchen; the Merchants' National Bank assigned its claim to William A. Nash, and Crosby assigned his claim to the U. S. Express Co. The parties, to whom the claims were thus assigned, were residents of New York. On October 8, 9 and 11, 1888, Jaquette, Kitchen, Nash and Thomas C. Platt, president of the U. S. Express Co., commenced attachment suits in New York City in the Supreme Court of New York upon the respective claims above mentioned against the Trader's Bank of Chicago, and attached or garnisheed the funds in the hands of the New York banks above named.

Boyle individual, Boyle guardian, the Merchants' National Bank, and the U. S. Express Co., who were the only parties required to answer the petition of the receiver, filed their answers on the 9th and 10th days of November, 1888, setting up their claims, the assignments thereof, the proceedings begun in New York, and insisting upon their right to prosecute the attachment suits, and upon the right of the New York court to entertain jurisdiction of said suits and to determine the ownership of the attached funds. These New York attachment suits are the proceedings referred to in the prayer of the receiver's petition as above set forth.

On March 4, 1889, the defendants to said petition, by leave of the court, filed their amended and supplemental answers, alleging therein that on January 5, 1889, Smith, the receiver, employed counsel in New York City and caused an appearance to be entered in the name of the Trader's Bank in the New York suits; that such appearance was in fact on behalf of said receiver; that, on January 8, 1889, said receiver caused undertakings to be executed and filed by the American Surety

Company of New York in the attachment suits in order to procure releases of the funds attached, and thereupon said funds amounting to about $25,000.00 were released and delivered to said receiver; that said receiver became thereby a party to the attachment suits and bound by the judgments therein; that on January 23 and 29, 1889, judgments were rendered by the Supreme Court of New York in favor of the plaintiffs in the attachment suits for the amounts of their respective claims as above set forth with interest and costs; that plaintiffs became thereby entitled to have such judgments paid out of the funds attached; that, by reason of the premises, the receiver is barred and estopped from maintaining his petition; that, under the constitution of the United States (Article 4, section 1), full faith and credit should be given to the legal proceedings and judgments in New York; that said judgments are conclusive adjudications, binding upon said receiver, as to the rights of the parties to the funds attached, and authorize the plaintiffs in the judgments to enforce payment of the same upon the undertaking of the American Surety Company. It appears from the answer of the United States Express Company, that, upon the recovery of its judgment in the name of its president, it brought its action in the Supreme Court of New York against said Surety Company upon the undertaking aforesaid, and, thereupon, on February 1, 1889, the Surety company paid to said president the full amount of the judgment, $9036.52.

In December, 1888, and January, 1889, testimony was taken before one of the masters in chancery of the Superior Court, but no order was entered in accordance with the prayer of the petition until March 4, 1889, when a hearing was had upon the issues made by the petition and the answers thereto. Upon the hearing the court entered a decree finding that the assignments made of the claims above named were without consideration and void and fictitious and made for the purpose of giving the assignors a preference over the other creditors, and

that the actions in New York were prosecuted in the interest of the Illinois creditors, who assigned the claims, and that said Illinois creditors were the real parties in interest, and the plaintiffs in the suits were mere nominal parties. By said decree it was ordered, that Boyle, individually and as guardian, and the Merchants' National Bank be enjoined from further proceeding in the New York suits against the Trader's Bank and "all attachment proceedings therein against the Seaboard Bank or any other bank or parties, and from instituting any further actions in any court in aid of said judgments, and from issuing any executions or other process for the collection thereof, and that they cause said action and all proceedings therein to be forthwith dismissed, and cause said judgments and any orders entered therein to be discharged of record, and cause to be released said Seaboard Bank and all other banks or parties from all liability in said actions and discharge all claims and liabilities arising under or by virtue of said actions and proceedings therein." In said decree it was also ordered that the United States Express Company "cause to be paid to said receiver * * * all sums of money received or collected of the said Seaboard National Bank or any other party or parties under or by virtue of its said action and proceedings in said Supreme Court of New York," etc.

From this decree an appeal was taken to the Appellate Court for the First District, where the decree was reversed and the cause remanded to the Superior Court with such directions as would amount to a dismissal of the petition and a denial of its prayer. The case is brought here by appeal from such judgment of the Appellate Court.

By the stipulation of the parties, such provisions of the New York Code of Civil Procedure as are applicable to the facts of this case, are in evidence. Under these provisions the defendant in an attachment suit may, at any time after he has appeared in the action, and before final judgment, apply to the court for an order to discharge the attachment as to the whole

or a part of the property attached; upon such application, he must give an undertaking to the effect that he will, on demand, pay to the plaintiff the amount of any judgment which may be recovered in the action against him; the execution of such an undertaking by any surety company authorized by the laws of New York to transact business shall be equivalent to its execution by the defendant and his sureties, if it is approved by the court; the undertaking must be filed with the clerk, and a copy, with notice of the filing, must be served upon the plaintiff's attorney; upon the discharge of the attachment, the sheriff is required to deliver the personal property attached to the defendant. (Throop's Am. Code of Civil Procedure, chaps. 1-22, secs. 687, 688, 690, 709, 710, 811).

The facts set up in the amended and supplemental answers, as to what was done under these provisions in the New York suits, are abundantly established by the proofs. In each of those suits, wherein the Trader's Bank of Chicago was the defendant, a New York attorney entered the appearance of the defendant and accepted service of the summons and complaint; the duly executed undertaking of the American Surety Company was filed; and the attachment levied upon the funds of the defendant was discharged.

It is true that, in the record of the proceedings thus had in the Supreme Court of New York, the name of the receiver of the Trader's Bank nowhere appears; the steps taken were in the name of the Trader's Bank itself. But Smith, the receiver, swears that he employed the attorney in New York to act for the Trader's Bank, and that whatever the attorney did was done under the receiver's direction. He also swears, that the American Surety Company gave the undertakings executed by it at the receiver's request, and that the fund of $25,000.00, which was released from the attachments by the filing of the undertakings, was paid to him as receiver. No one but the receiver had any authority to act for the Trader's Bank. Tallman, the cashier, and Rutter, the president, were the only

stockholders; the former filed the petition for a receiver as above stated, and the latter was in a dying condition, if not already deceased. The Bank was insolvent and in the hands of a custodian appointed by the Superior Court. In the order appointing a receiver, the bank and its officers and agents were directed to assign, transfer and deliver to that officer all its real and personal property, things in action, equitable interests, and other effects, but no such assignment or transfer seems to have been made. It being a question, under this state of facts, whether the receiver was clothed with the legal title to the property of the bank, or to the claims existing in favor of the bank, it was proper to bring suits in the name of the bank, and, so also, if suits were to be defended, as in the case of the New York attachments, it was proper to defend in the name of the bank. (Kerr on Receivers, (2d ed.) page 206, note 1 and cases there cited.)

The action of the receiver, as thus described, made him in fact, though not in name, a party to the New York suits, and he must, therefore, be bound by the results reached in those suits. A former adjudication is sometimes binding upon persons who are not parties to the record. One, in whose behalf or under whose direction a suit is prosecuted or defended, will be bound by the judgment or decree rendered in it; and parol evidence will be admitted to show who is the real party in interest, and that such party conducted the litigation in the name of another person. (*Bennitt* v. *Star Mining Co.* 119 Ill. 9; *Chamberlain* v. *Preble,* 11 Allen, 370; *Craig* v. *Ward,* 36 Barb. 377).

It is said that the judgments in the attachment suits were mere adjudications as to the amounts due the respective plaintiffs therein, and did not determine the question of the ownership of the funds attached. But we think that the proceedings in the suits in question must be regarded as having a broader scope, as against the receiver, than that to which it is thus sought to limit them. When the attachments were discharged

19—135 Ill.

and the funds attached were released, the bonds of the Surety Company stood in the place of such funds and were substitutes therefor. If there had been no such discharge and release, the judgments would have taken effect upon the funds attached and would have been satisfied, in whole or in part, out of such funds. Counsel for the appellant say in their brief: "Pending the hearing, appellees obtained   *  *  *   judgments in the attachment suits in New York against the Trader's Bank of Chicago, and *against the funds attached*." While this may not be strictly accurate, it is nevertheless true that the bonds were filed in court in the place of the funds that were withdrawn in order that the plaintiffs might make their judgments, when recovered, out of the bonds, if it should become necessary to enforce them. The admission, implied in the filing of the bonds that the plaintiffs were entitled to resort to them for the recovery of their judgments, was at the same time an admission that the same plaintiffs would have been entitled to resort to the funds attached, if the latter had not been released. In other words, the Trader's Bank, by substituting, in each suit, the undertaking of the Surety Company in place of the funds attached, thereby conceded to the plaintiff in such suit the ownership of those funds in the event of the recovery of a judgment.

By the terms of each of the bonds, after reciting that an attachment was issued in the action, and that the Trader's Bank appeared in court and applied for an order to discharge the same, the Surety Company undertakes that "the defendant will, on demand pay to the plaintiff the amount of any judgment which may be recovered in the action against the defendant." Section 688 of the New York Code provides, that "*the defendant* must give an undertaking." Though the undertaking is signed only by the Surety Company, it is really the act of the defendant. The Trader's Bank, in consideration of a release of the attached funds, promised to pay the judgment when recovered. But behind the Trader's Bank, and acting in the

name of the Trader's Bank, was the receiver appointed by the Superior Court. In effect and in law, the receiver promised to pay the judgment in return for the delivery to him of the attached funds. The $25,000.00 were paid, not to the Trader's Bank, or any of its officers, but to the appellant, as receiver. The appellant did not receive the funds as an individual, but as an officer of the court. He holds the funds now as receiver. He is estopped by his conduct in using the name of the bank to obtain a discharge of the attachments, from denying to the plaintiffs in the judgments the enforcement of the obligations which he himself caused to be given to them.

It is manifest from what has been said, that the appellant abandoned his right to the relief prayed for in his petition when he resorted to the New York court to get possession of the attached funds. He was no longer in a position to ask the Superior Court "to stay and discontinue all proceedings under the writs of attachment and in the suits" in New York, because, by the very terms of the bonds which he caused to be filed in those suits, he authorized the plaintiffs therein to proceed with them, promising to pay their judgments if they obtained any.

It is manifest, also, that the decree of the court below is erroneous, in that it exonerates the receiver from the obligation to fulfill his engagements. It is very broad in its language. It enjoins the appellees "from instituting any further actions in any court *in aid of said judgments.*" Actions upon the undertakings of the American Surety Company would be "in aid of said judgments," and the receiver caused those undertakings to be given for the express purpose of enabling the owners of the judgments to collect them. The decree requires the appellees to "discharge all claims and liabilities arising under or by virtue of said actions and proceedings therein," and thereby deprives them of any right to enforce the bonds voluntarily given under the direction of the receiver for their benefit and protection. The decree, in directing the appellees to cause the

judgments entered in the New York suits to be discharged of record, nullifies and makes void the undertaking of the Surety Company that the Trader's Bank will pay those judgments.

But it is claimed that no order was entered by the Superior Court authorizing the receiver to appear in the attachment suits in New York, and that the Superior Court cannot be bound or estopped by the unauthorized acts of its officer. The receiver says : "Everything I did in regard to directing bonds to be given by the American Surety Company, etc., was done under the order and authority of the court here," (in Chicago).

The foundation of the rule, that a receiver must first obtain an order from the court before he can prosecute or defend an action is that the court must determine for itself whether the expense of litigation should be incurred. And, where the litigation participated in by a receiver has ended, and during its progress no objection has been made to his action on the ground that he was proceeding without an order permitting him to do so, the absence of such order can only be material in determining whether the receiver shall be allowed the costs and expenses incurred by him, or in determining what disposition shall be made of the results of the litigation. It will not be contended that, where a receiver has instituted a proceeding without such an order, his action may not be approved by the court so as to give it the same effect as though the order had been made in the first place ; and where he has obtained monies or other assets as the result of such a proceeding, he cannot part with them without the consent of the court. When funds once come into his hands as receiver they are in the custody of the court, and, whether he has a right to retain them or not, he must first apply to the court before he can dispose of them. Even if money is paid to him by mistake, the court alone can order it to be refunded. (Kerr on Receivers, (2d ed.) page 205, note 1).

The funds obtained by the receiver in this case through the discharge of the New York attachments were in his hands from

the early part of January, 1889, to the hearing of the cause on March 4, 1889. The fact that he had obtained these funds, and the mode of obtaining them, were set up in the amended and supplemental answers filed by leave of the court, and were referred to and brought to the attention of the court by the proofs introduced upon the hearing; and yet there was no provision in the decree then entered directing the receiver to return the funds to the control of the court in New York, or to pay them to the appellees, or to apply them upon the judgments, or to dispose of them in any other way. They were left in the hands of the receiver; and, inasmuch as the decree directed that no action be taken upon the bonds, and thereby cut off the owners of the judgments from in any way collecting the amounts due them, it follows that the court below must have ratified and approved the action of the receiver in obtaining the funds, and must have endorsed his retention of them. Hence the acts of the receiver in the premises must be regarded as the acts of the court whose officer he was. As the receiver is estopped by his proceedings in New York from denying to the plaintiffs in the judgments the right to proceed against the American Surety Company upon the bonds, the Superior Court cannot relieve him from the effect of such estoppel. It is unnecessary to inquire whether, as an abstract proposition, the doctrine of estoppel can be applied to courts as well as to individuals. It is sufficient to say that the proceedings of courts must be based upon the same principles of fairness which are ordinarily applied to the conduct of individuals. If the court intended to repudiate and disapprove of the act of its receiver in procuring the attachments to be discharged and the bonds to be executed and filed, it could not retain within its own grasp the fruits and benefits of the act so repudiated and disapproved of. If, however, it intended to endorse the conduct of the receiver, then the same principles of law must be applied to the interpretation of such conduct as would be applicable to an individual under like circum-

stances, and the same consequences must be held to result as would follow from similar conduct on the part of an individual.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAKER: I do not concur.