Taylor v. Gray.

George S. Duryee, commissioner, &c., complainant, United States Credit System Company, defendant,

Jerome Taylor et al., appellants,

v.

George R. Gray, receiver, &c., respondent.

[Argued June 22d and 23d, 1899.    Decided November 20th, 1899.
Filed November 22d, 1899.]

1. The receiver of an insolvent corporation may recover its assets withdrawn after it has become insolvent in order to secure some of its directors against a liability incurred for the corporation. A preference of that character cannot stand, although at the time it is given there is no statutory prohibition against it.

2. Directors of a corporation who have become its sureties to creditors will, on insolvency, be subrogated to the rights of the creditors.

3. Certain creditors of a New Jersey corporation brought suit against it in New York. Some of its directors became its sureties in order to relieve its property in that state from attachment. After adjudication of insolvency a part of the property came to the hands of its receiver. Order was duly taken forfeiting the corporation's charter. The receiver represented to the chancellor that the attorneys who had been defending the New York suit for the corporation would not proceed with the defence in his behalf unless their fees for past services should be paid, but that if such fees should be paid they would attempt to procure a dismissal of the complaint, on the ground of forfeiture of charter, for a specified fee, and if unsuccessful would try the cause for a specified fee. On this representation the receiver was authorized to pay, and did pay, such fees in arrear. Shortly thereafter, on petition of the creditors and on notice to the receiver, the order for forfeiture was modified so as to permit the New York suit to proceed. The creditors laid before the receiver their claim on the same basis as in the New York suit, and he informed them that he had adjusted it for a less sum. The receiver afterwards decided not to defend the New York suit and so notified one of the directors. Judgment was recovered for the full amount of the claim. The directors compromised with the creditors for a sum less than their recovery, but exceeding the receiver's adjustment of the claim, and took an assignment of the judgment. —Held, (1) that the directors had a lien on so much of the New York property as came to the hands of the receiver; (2) that the directors should be allowed to prove the claim of the judgment creditors on the basis of the compromise and need not relitigate the matter with the receiver; (3) that such relief could be afforded under an answer by way of cross-bill in a suit brought

by the receiver to recover assets of the corporation which had been withdrawn after insolvency and had been placed in trust for the indemnity of the directors.

4. The provision of the General Corporation act, authorizing an appeal to the court of chancery from any determination of the receiver of an insolvent corporation, is not technical. Relief may be given under an original bill or by way of cross-bill, or in any proceeding by which jurisdiction may be secured. If, after the receiver's determination, a new element comes into the controversy, it is not necessary to present the same to the receiver before appealing to the court for adjudication.

On appeal of Jerome Taylor et al. from decree advised by Vice-Chancellor Reed.

The cause was heard on bill, answer and stipulation. The following is a chronological statement of the facts:

1890.
Mar. 27.   The United States Credit System Company, organized under the General Corporation act of this state, filed its amended certificate, stating its object to be to sell and furnish a system of credits and to limit and guarantee wholesale dealers, manufacturers and jobbers against loss arising by reason of bad debts; and that its business, with the principal office in Newark, N. J., would be carried on in all the states and territories of the United States of America and in other countries specified.

April 9.   The company issued to the firm of S. Rawitzer & Co., of New York City, its policy, insuring them against a specified excess of loss through insolvency of purchasers of merchandise sold between April 1st, 1890, and April 1st, 1891.

1893.   Rawitzer & Co., having made a claim, under and within the limit of their policy, for $6,912.26 and interest from November 28th, 1891, which was disputed, began suit thereon in the Supreme Court of the State of New York, and either issued or were about to issue a warrant of attachment against property in that state belonging to the company, exceeding in value the amount of their claim, which process the laws of that state allow against a foreign corporation.

July 24.   Henry Untermeyer and Adolph Hellenberg, two of the fifteen directors of the company, at its request gave bond to Rawitzer & Co. in $12,000, conditioned to pay any recovery in the action, and the attachment was discharged or not executed. The company, however, entered appearance and filed answer in the cause.

Sept. 25. The board of directors of the company passed a resolution requesting its members to "re-bond" Messrs. Untermeyer and Hellenberg, and on the same day twelve of the other directors, of whom Jerome Taylor was one, gave to those gentlemen their written obligation to bear *pro rata* with them the payment of any sum they should be called on to pay by reason of said bond in case the corporation should be unable, by reason of insolvency or otherwise, to reimburse them.

1894.  A report from the company's books, made to the New Jersey com-
July 31. missioners of banking and insurance, by examiners appointed by him, showed on July 1st an impairment in value of $85,766.13 in the capital stock of the company, then $288,550.

Aug. 17. The executive committee of the board of directors of the company adopted the following resolution, viz.: "Moved that we make a deposit of $6,000 with Jerome Taylor, for him to hold in trust, to cover any liability on the bond given by Messrs. Untermeyer and Hellenberg in the Rawitzer case." The sum named was paid to Mr. Taylor, who, on August 21st, deposited it with the Fidelity Title and Deposit Company.

Aug. 20. At a meeting of the board of directors the president reported that the result of an examination of the company's affairs by such commissioner showed an impairment of capital of about $60,000. The feasibility of procuring a surrender and cancellation of stock in proportion was discussed, and the executive committee were authorized to consult counsel, and if then they should be satisfied that it was for the best interests of the company, to make application for a receiver.

Aug. 21. Mr. Knight, one of the directors and also one of the counsel of the company, notified the deputy commissioner of banking and insurance that the company had that morning stopped issuing policies because of its insolvency, and the next day a new examination was made. The directors and officers of the company then told the deputy commissioner that the company was insolvent, and expressed a wish that a receiver should be appointed as soon as possible, as a great many claims were pressing, and they did not wish to prefer one creditor over another.

Aug. 22. The examiners reported to the commissioner that further investigation showed that the amount charged for liabilities on claims in process of adjustment was insufficient, and the impairment of capital on July 1st was $195,766.13.

Aug. 23. The commissioner filed his bill against the company for an adjudication of insolvency and appointment of receiver, and the chancellor made order to show cause thereon, returnable September 4th, and appointed George R. Gray temporary receiver.

Taylor v. Gray.

Sept. 4. The receiver made his sworn report, showing an excess of liabilities over assets of $280,841.25. This included as a liability the sum of $101,299.16 as return-premiums on cancellation of policies and did not include capital stock. On the same day the chancellor adjudged that the company was insolvent and appointed Mr. Gray permanent receiver.

Sept. 6. Order was made requiring creditors to present their claims within four months and directing notice of the order to be mailed each creditor.

Oct. 2. Order was made declaring the company's charter forfeited and void except for collecting and distributing assets.

Nov. 7. The receiver filed petition representing that before his appointment two suits had been begun in New York against the company, one by Douglas L. White for $4,000 and one by S. Rawitzer & Co. for $3,000; that in the latter case, in order to dissolve an attachment, the company gave a bond in $6,000, with a surety, and to secure the surety deposited $6,000 with Jerome Taylor; that the defence of both suits was entrusted to the firm of Rose & Putzel, lawyers, of New York City, in whose hands all papers and documents were placed; that said firm had sent a bill to the company before its insolvency, for $500, retaining fee and for preparation of the cases; that it would be impossible for the receiver to defend the suits successfully without such papers and documents; that Rose & Putzel refused to deliver up the papers and documents or go on with the cases unless their bill of $500 should be paid; that in the receiver's opinion it would be advisable to have Rose & Putzel continue in charge of the cases, and that they had agreed with the receiver to attempt to have the cases dismissed on account of the forfeiture of the company's charter, and if they succeeded would make only a further charge of $200, and if unsuccessful and should try the cases they would make only a further charge of $500, which charges, in the opinion of the receiver, were fair and reasonable. The receiver prayed permission to pay Rose & Putzel $500 out of the assets of the company and for such other relief as might be equitable, and on the same day order was made for payment to Rose & Putzel of $500 for their services mentioned in said petition.

1895.
Mar. 8. The receiver reported *inter alia* that he had mailed on postal cards notice of the order to limit to 1,100 creditors; that when the company came into his hands he found $75,034 of contested claims, and that legal proceedings had already been commenced in New York City and other places named; that a large majority of those cases had been discontinued and claims filed with him as receiver, but that some of them were yet in court.

Taylor *v.* Gray.

| | |
|---|---|
| 1896.<br>Mar.  5. | The receiver reported *inter alia* that three suits, begun before his appointment—one in each of the states of Massachusetts, New York and Michigan—were still pending. |
| June 29. | The sworn claim of Rawitzer & Co. was presented to the receiver for $6,912.16 and interest from November 28th, 1891. |
| Sept.  5. | The receiver reported *inter alia,* "Of the three cases which were pending before my appointment, in foreign jurisdictions, one pending in Massachusetts has been decided; the other two in New York are still pending. * * * Amount of claims pending in court of New York State and unsettled, $11,534.67." |
| Oct.  23. | The receiver sent to Rawitzer & Co. a letter as follows: |

"Dear Sirs—I have taken up your claim against the United States Credit System Company, and from the facts presented by you to me, and on examination of your books, I adjust it as follows :

[Here are stated various items, aggregrating]...... $5,128 99
Interest from December 1st, 1891, to August 23d,
   1894, the date of insolvency of the company.......   837 56
                                                        ————————
I therefore allow your claim for........................... $5,966 55

I have deducted from the Schofield claim the amount you might have realized during the six months succeeding the examination of your certificate.  I hold that in such a case where the insured has been offered a settlement, and refuses it, the company must have the benefit of the offer."

| | |
|---|---|
| 1897. | The receiver sent to Jerome Taylor a letter as follows : |
| Jan.  26. | "Dear Sir—Some days ago I received a letter from Messrs. Rose & Putzel, stating that the Rawitzer case would soon be tried, and asking me if I wished them to defend it for me.  I answered, saying that I would not do anything in the matter and didn't wish them to appear for me.  I notify you of this, as I consider it only right that the sureties, who may be liable for any judgment recovered in this case, should know about its condition.  My counsel is now preparing a bill to test the right to the $6,000 now on deposit with the Fidelity Title and Deposit Company." |
| Mar.  8. | Rawitzer & Co. recovered in their New York action the sum of about $9,600, and shortly afterwards brought suit against the sureties on their bond. |
| Mar. 10. | The receiver filed the bill in this cause, seeking to recover the $6,000 deposit, as illegally withdrawn from the assets of the company after knowledge of its insolvency, in violation of the duty of the directors. |

---

Taylor *v.* Gray.

---

Apr. 26.   Twelve of the directors contributed $750 each, and therewith com-
promised the New York judgment for $9,000, and at their
request Rawitzer & Co. assigned to Uzal H. McCarter, in trust
for them, the judgment, the claim presented to the receiver
and whatever interest the firm had in the Taylor deposit.

June 11.   The defendants filed their answer, denying knowledge by the
directors, on August 17th, 1894, of the company's insolvency
and denying insolvency in fact and setting up the recovery,
payment and assignment above stated and praying subroga-
tion to all rights of Rawitzer & Co. and the sureties, and that
the claim presented to the receiver might be amended so as to
embrace the amount as recovered in New York.

The vice-chancellor advised a decree that the trust fund of
$6,000 should be paid to the receiver ; that the twelve directors
who paid Rawitzer & Company should have a lien on so much
of the property of the company upon which an attachment
issued in New York as came into the hands of the receiver, to
be ascertained by a master, and that further equity should be
reserved.    In support of this decree he filed the following
memorandum opinion, viz.: "I am of the opinion that the
$6,000 paid to the defendant Taylor in trust, to cover any lia-
bilities of the sureties on the bond given by Messrs. Untermeyer
and others cannot be retained by the trustee for that purpose.
The condition of the company at the time when the resolution
was passed to make such disposition was such as prevented the
directors from putting any of its assets in pledge for the special
benefit of any director.   So far there must be a decree for the
complainant, but I am of the opinion that those who paid the
claim of the plaintiffs in attachment in New York and who had
secured the discharge of the company's property in New York
from the lien of the attachment, are entitled to be subrogated to
the position of the plaintiffs in attachment, having the lien upon
this property.   The value of the property, so covered by the
attachment lien and so discharged from the lien as such value
was ascertained by the sale of said property by the receiver,
belongs to the paying sureties in so far as it is necessary to
repay them.   This relief is prayed for in the answer, which
answer can be, by consent, regarded in this particular as a cross-

bill, as I understand the receiver wishes to settle all equities, if possible, in this suit.   I am unable to see how the doctrine of subrogation can give the sureties a lien upon such property, subject to the lien of the attachment, which was not in existence at the time of the company's insolvency.   The sureties, having paid the attaching creditors, are of course subrogated to the position of those creditors and can prove against the insolvent corporation as such and receive their dividend.   But when the question arises, how far the right of the attaching creditors, to which the sureties are subrogated, is good *in rem*, namely, as a specific lien upon the company's property, then it is apparent that the property must have existed at the time of the insolvency *in specie*.   A lien could not follow property converted into money by the company previous to its insolvency; nor can it follow the money arising from such conversion; nor can it reach the general assets of the company.   I will advise a decree for subrogation to the extent indicated."

The parties having agreed that all of the property upon which an attachment issued in New York became a lien that came to the receiver's hands had been sold for $107.50, the cause was heard on the equity reserved, and decree was advised that the sum last named should be paid to the twelve directors and that the other relief prayed in the answer should be denied.   In support of this decree the vice-chancellor filed the following opinion, viz. : " The language of the former opinion, namely, ' The sureties, having paid the attaching creditors [the amount due such creditors from the credit system company] are of course subrogated to the position of those creditors,' &c., leaves open the question how the amount due the attaching creditors is to be determined.   As to the liability of the sureties, it was to be determined by a judgment, because this was the term of their obligation.   But the question in hand is, how is it to be determined in respect of the receiver?   The language used in the former memorandum referred to the payment of such debts as could be proved against the receiver, not proved against the sureties, although it was to be presumed that the same amount could be proved against both, although the respective claims

were assertable in different forums. It is entirely clear that, inasmuch as those paying the claim of the attaching creditors stood in the steps of such creditors, the rights of the former can be no greater than of the latter against the receiver. The creditors could only prove against the receiver in this court. They could not draw the settlement of the amount of their claim against the corporation into the courts of New York, so as to bind the receiver. It would have been improper for the receiver to submit the question to the court of New York. He therefore very properly took no notice of the New York action, which was litigated expressly and entirely for the purpose of fixing the liability of the sureties under the condition of the bond which they had given. The sum found due by the judgment in that suit has no force whatever against the receiver and can receive no recognition in this court. The amount of the debt due to the attaching creditors is fixed by the only method which can be recognized at $5,966.55. As they had the right to prove for this sum only, and as the right of the paying sureties stands in the stead of the attaching creditors, I am constrained to the conclusion that the sureties can prove for no more."

*Mr. James E. Howell*, for the appellants.

*Mr. Howard W. Hayes*, for the respondent.

The opinion of the court was delivered by

COLLINS, J.

On the principal subject of this litigation, the result reached by the learned vice-chancellor accords with the opinion read by him for this court when he was one of its members, in the case of *Montgomery* v. *Phillips, 8 Dick. Ch. Rep. 203*. It is quite clear that the withdrawal of assets by vote of the executive committee of the board of directors of the United States Credit System Company, in order to create a trust fund to secure some of the directors of the company against an antecedent liability,

was illegal if the company was insolvent at the time of such withdrawal. Even without statutory prohibition, then non-existent, a preference of that character cannot stand. The appellants challenge the proof of insolvency, but it seems to us ample. The stipulation in the cause is to the effect that the facts set out in the several papers specified, among which are the bill for receiver and accompanying affidavits and the report of the temporary receiver, so far as relevant to the issue, are admitted. In the preface to this opinion are recited facts derived from those and other admittedly-correct documents, that establish insolvency and knowledge of the directors of that condition as early as August 21st, 1894, the date of the deposit of the trust fund. The statement of the bill, evaded by the answer, is that the money was not even paid to Mr. Taylor until that date, although the resolution of the executive committtee was passed on August 17th, but we think that insolvency antedated the resolution. The condition found by the receiver was not the growth of a week. The directors, and especially the executive committee, were bound to know, and must be presumed to have known, the state of affairs. Indeed, it is too plain to admit of discussion that the resolution was passed, because the directors foresaw the speedy termination of the company's career.

On the subsidiary question of the right of the sureties to a lien on the New York assets, we also agree with the vice-chancellor. Only so much of the property as remained *in specie* could be followed in the hands of the receiver. The lien on the residue was gone as soon as the property was dispersed in the course of a business conducted under the direction of the sureties themselves. There is more doubt if any lien at all existed. The bill and answer assume an attachment, but the obligation of the sureties recites only an intention to issue a warrant, which it was desired to prevent. The receiver has not appealed, and as the decree is equitable in this regard it will not be disturbed.

On the remaining subject of dispute, the final decree, we think, was wrong. It is settled that unless there is something in statute or decretal order tantamount to dissolution, a pending action against a corporation may regularly proceed, notwith-

standing an adjudication of insolvency and the appointment of a receiver to wind up its affairs and distribute its assets among creditors and stockholders, and this is true although the action is in the courts of another state than that of the home jurisdiction ; and under the federal constitution the judgment in the action will be conclusive upon every one. *Pringle* v. *Woodworth, 90 N. Y. 502.* The order of forfeiture of the charter of the United States Credit System Company worked a dissolution of the company, and it has been held in the United States supreme court that in such a case a pending action abates. *Pendleton* v. *Russell, Receiver, 144 U. S. 640.* Therefore, a modification of that order was necessary in order to permit the New York action to proceed, and was very properly made by the chancellor. It would have been unjust to deprive the plaintiffs in that action of the advantage of the bond. that had been given them in lieu of an attachment, and they, of course, could not have availed themselves of that bond if they had not been allowed to proceed to judgment. They were allowed to proceed, and the consequent judgment ought to be given its normal effect. It was said, however, although *obiter*, by Mr. Justice Field, in *Pendleton* v. *Russell, ubi supra,* that a receiver cannot take charge of any proceeding in a foreign jurisdiction by commencing an action or defending an existing action without express authority of the court whose officer he is, so as to bind any property or effects in his hands as receiver. This is too broad, and the cases cited do not support the *dictum.* Implied authority or ratification will be sufficient to support even affirmative action (*Smith, Receiver,* v. *United Express Co., 135 Ill. 279*), and if the doctrine has any application here the chancellor's order of November 7th, 1894, was ample warrant for the receiver to defend. In *Reynolds* v. *Stockton, 140 U. S. 254, 273,* it was well said by Mr. Justice Brewer that whatever matters are, by the courts of primary administration, permitted to be litigated in the courts of another state come within the rule of conclusiveness. The receiver, respondent in this cause, does not dispute the soundness of these views, but he contends that by laying before him, as receiver, their claim against the

Taylor *v.* Gray.

insolvent corporation, Rawitzer & Company abandoned their New York action and submitted themselves to the exclusive jurisdiction of New Jersey. How the claim came to be presented or received so long after the order to limit creditors had expired is not explained. Probably no notice of the order was sent Rawitzer & Company, an omission significant of the understanding of the receiver so often implied in his various reports to the chancellor that their claim was in litigation and did not need to be presented. Presentation at some time was doubtless thought necessary by the creditor, and, lest there might be a dividend omitting the claim, which might lead to embarrassment, it was thought best not to delay it until after the trial of the action. We agree to the view that presentation was necessary. The order to limit creditors was purely administrative, not required by the statute in force at the time it was made (*Gen. Stat. p. 904*), and on reasonable excuse would have been opened almost, of course, at any time before distribution. Under the terms of the order, if notice was not mailed Rawitzer & Company their presentation of claim was timely. At all events, its regularity is not questioned. The contention that it worked an abandonment of the New York action has no basis. A like argument was repudiated in a case almost identical with this, by Judge Woods, in the circuit court of the United States for Indiana. *Pine Lake Iron Co.* v. *La Fayette Iron Works* (*Adams, Intervener*), *53 Fed. Rep. 853.* The learned judge held in that case that the proving of a claim without any reference to a pending suit in another jurisdiction, of which suit the receiver had knowledge, was no waiver of the suit, and that the judgment afterwards therein recovered was conclusive. It would be most inequitable in this case, in view of the action of the receiver and the orders of the chancellor, to hold these sureties, but not the receiver, bound by the New York judgment. The notice given by the receiver to Mr. Taylor was consistent with a decision on his part that he had no defence to the action. To interpret it now as a notice that he meant to draw the litigation, as far as he was concerned, into New Jersey, is not permissible. He gave notice neither that Rawitzer & Company

had laid their claim before him as receiver nor that he had passed upon it. The recovery in New York is simply for the claim as constantly made by Rawitzer & Company, with interest and costs. Interest alone brings the claim above the sum for which the judgment was compromised. The difference between the parties extended only to the Schofield loss, as to which the receiver sought to apply a harsh and doubtful interpretation of the policy. The judgment must be held to be conclusive everywhere and upon everyone.

We must still consider how to give effect to this judgment. The respondent insists that no other practice can be sanctioned than a judicial determination by the receiver, subject to appeal to the chancellor. A revision of the General Corporation act took effect July 4th, 1896 (*P. L. of 1896 p. 277*), a few days after the presentation of the claim of Rawitzer & Company, and as it affords more color for the receiver's insistence than can be found in the former statute, I will consider it as applicable to the claim, doubtful though that construction may be. By section 76 the receiver may examine witnesses and must pass upon and allow or disallow all claims presented or any part thereof, and notify the claimants of his determination. This was a new provision in the law. Previously, the only powers of the receiver were such as might be fairly implied from the section next cited. Section 78 reads as follows:

"Every such insolvent corporation, or any person aggrieved by the proceedings or determination of such receiver in the discharge of his duty, may appeal to the court of chancery, which court shall in a summary way hear and determine the matter complained of and make such order touching the same as shall be equitable and just."

This language is identical with the first clause of section 82 of the former act, except that there the court is designated as the chancellor. In that section also was contained a grant of chancery jurisdiction and procedure that the revisers have omitted as unnecessary. The appeal given is not technical. The word is used in a broad, general sense. No particular form is prescribed, and there is no reason why the jurisdiction should

Taylor v. Gray.

not be appealed to by any recognized form of chancery procedure. Indeed, in this case affirmative action was needed, for, after the presentation of the claim to the receiver and his action thereon, a new and controlling element arose, namely, the judgment. It was necessary to amend the claim so as to embrace that judgment, and it was proper to invoke, to that end, the direct jurisdiction of the chancellor, and to ask decree of its conclusiveness. That was precisely the course adopted by Judge Woods in the case decided by him above cited. It would be idle formality to take a decree to amend the claim, and then argue before the receiver the effect of the judgment, subject to an appeal from his adverse decision to the chancellor and then to this court. The necessity for amendment gave jurisdiction, which, being obtained, ought to be held for all purposes. It was proper furthermore to settle all cognate equities in the suit brought by the receiver. Good practice, indeed, required a pleading by way of cross-bill, but the vice-chancellor rightly considered that as non-essential, and the pleadings of course can be properly moulded.

·A question arises as to the amount to be established as a lawful claim against the company. This is not without difficulty, but it would seem that the directors, standing in the position of sureties ought not, although assignees of the judgment, to be allowed more than the sum actually paid for it, and that is our decision.

The interlocutory decree will be affirmed, and the final decree will be reversed for the purpose of modification, so as to establish a claim upon the assets of the corporation *pro rata* with the other creditors whose claims have been or shall be established, in favor of Uzal H. McCarter, trustee, for the sum of $9,000, less $107.50 awarded by the decree, and subject to a rebate of interest to August 23d, 1894, the date to which the adjudged insolvency relates. *Mayer v. Attorney-General, 5 Stew. Eq. 815.*

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH—12.

*For affirmance*—None.