LAMOILLE VAL. R. CO. (MERCANTILE TRUST CO. v.). See Case No. 9,432.

## Case No. 8,032.

### LA MOTHE v. FINK.

[8 Biss. 493; 9 Reporter, 168; 12 Chi. Leg. News, 152.] [1]

Circuit Court, E. D. Wisconsin. April, 1879.

PERSONAL PROPERTY—LEVY AND SALE — INJUNCTION—EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.

1. A mortgagee of ordinary chattels, in possession under his mortgage, is not entitled to an injunction against the marshal, restraining him from levying upon and selling such chattels, under an execution against the mortgagor.

2. The mortgagee has an adequate remedy at law, and equity should not interfere.

3. "Adequate remedy at law" does not mean ability to resort to every form of legal procedure. If any form of action at law will give such remedy, equity will not interfere.

4. Discussion of jurisdiction of chancery over articles of personal property; and many cases cited and distinguished.

[This was a bill in equity by Mary F. La Mothe against Henry Fink.]

Murphey & Goodwin, for complainant.

G. W. Hazleton and Butler, Williams & Butler, for defendant.

DYER, District Judge. This is an application for a preliminary injunction based upon a bill filed to restrain the defendant from selling certain personal property seized by him as marshal of this district, as the property of John McDonald, upon an execu-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 9 Reporter, 168, contains only a partial report.]

tion issued on a judgment at law recovered in this court by one Cook against McDonald, of which property complainant claims to have been a mortgagee in possession at the time of the seizure, and to be vested with the legal title.

The material averments of the bill are these: On the 9th day of December, 1878, McDonald executed to complainant a chattel mortgage on the property in question, to secure the payment of an alleged indebtedness amounting to about $10,000, which mortgage was on the same day filed in the office of the town clerk of the town where the property was situated, as required by the statute of the state. It is alleged that on the 13th day of January, 1879, deeming herself insecure, and in pursuance of authority given in the mortgage, she took possession of the property, with a view to selling and converting the same into money for the satisfaction of her debt, and that she has ever since held possession of the same.

It is alleged that on the 16th day of January, a suit at law was commenced in this court by one Isaac Cook against John McDonald, to recover an alleged indebtedness of about $3,100; that the property in question was seized upon a writ of attachment issued in said action, and that the marshal forcibly and unlawfully took possession of the property; that on the 6th day of February, 1879, judgment was obtained in that action by Cook against McDonald, and that on the same day an execution was issued thereon, which was levied upon the same property which, it is alleged, was at the time in the lawful possession of complainant. It is alleged that upon making the execution levy, the defendant forcibly and unlawfully dispossessed complainant of the property, and that both the defendant and Cook knew of complainant's claim to and possession of the property, and that their proceedings were taken in defiance of her alleged rights. It is further averred that the defendant has advertised a sale of the property upon the execution held by him, and is about to sell the same, and the prayer of the bill is that he may be enjoined from selling, disposing of, or further holding possession of the property under the execution levy, and from any interference with the possession and rights of the complainant. Affidavits and exhibits accompany the bill sustaining the allegations, and from a statement annexed to the bill, it appears that the property consists of live stock, wagons, carriages, sleighs, harnesses, and a miscellaneous assortment of farming machinery and utensils, described in the mortgage as situated on the farm of McDonald.

There is no doubt that this court has jurisdiction to entertain this bill, and may grant an injunction as prayed, if the bill makes a case for equity relief, and whether it does or not was the question argued at the bar. If it does, then the court ought to grant an injunction pendente lite, in order to secure to complainant the final relief which she may ultimately be entitled to. If it does not, then no preliminary injunction ought to be granted. The present application, therefore, goes to the merits of the bill.

In determining the question involved, we have to consider the character of the property, the fact that complainant's interest therein originated in a chattel mortgage to secure indebtedness alleged to have been owing by McDonald to her, and the further fact that she took possession of the property for the purpose of selling and converting the same into money for the satisfaction of her debt. Accepting the allegations of the bill as true, and admitting that complainant was in possession and held the legal title to the property when it was seized, the question is whether there is such want of adequate remedy at law as entitles complainant to come into a court of equity for relief by injunction to restrain the threatened disposition of the property at execution sale.

There is a familiar class of cases cited in the elementary works, in which, on account of antiquity or historical character or other peculiar value, jurisdiction in equity was entertained to prevent the transfer or injury of articles of personal property, or to compel their specific delivery. But it is stated that these were cases where the articles were of peculiar value and importance, and the loss of which could not be fully compensated in damages. Such was the case of the silver altar-piece bearing a Greek inscription, and of curious antiquity, and which could not be replaced in value (Duke of Somerset v. Cookson, 3 P. Wms. 390); and of the horn which constituted the tenure by which an estate was held (Pusey v. Pusey, 1 Vern. 273); and of the silver tobacco box (Fells v. Read, 3 Ves. 70); and of the masonic dresses and decorations (Lloyd v. Loaring, 6 Ves. 774); and other similar cases involving articles of property which were family relics or heirlooms (Lady Arundell v. Phipps, 10 Ves. 139; Nutbrown v. Thornton, Id. 159; Lowther v. Lord Lowther, 13 Ves. 95; Earl of Macclesfield v. Davis, 3 Ves. & B. 16).

All these were cases where the chattels were articles of antiquity or curiosity, or were memorials of affection, or constituted insignia of office, and equitable interposition to preserve them to the owner in specie, was sustained on the ground that the recovery of their intrinsic value in money would not be adequate satisfaction to the owner.

There is another class of cases in which courts of equity have interposed to protect the owner of specific chattels in the beneficial enjoyment and use of them in specie. As where certain articles of property are placed in the hands of an agent to be held for the owner, and the agent has threatened

to dispose of them to a third party, in violation of his trust. The ground upon which equitable relief in such cases has been afforded, is found to lie in the fiduciary relation which existed between the parties, together with the threatened mischief. Wood v. Rowcliffe, 3 Hare, 304.

The principle upon which jurisdiction may be invoked to grant relief by injunction or decree for specific delivery of personal property in the classes of cases mentioned, is plainly not applicable to the case at bar, for here the case is simply that of seizure and threatened sale upon execution of ordinary personal property, the entire and actual value of which for all purposes, is ascertainable, and is wholly measurable by money, and which the alleged owner holds only for purposes of sale and conversion into money, to satisfy a debt.

On the argument such reliance was placed upon several cases decided by the supreme court, to sustain the present application, that they should be particularly noticed.

In the case of Georgia v. Brailsford, 2 Dall. [2 U. S.] 402, an obligee having recovered a judgment on a bond which was claimed by the state of Georgia under a certain act of confiscation, and execution having issued, the state filed a bill in the supreme court setting out its title, and a temporary injunction was granted to stay the money in the hands of the marshal until the title of the state could be tried. The obligees in the bond were British merchants. They had brought suit against the obligor in the court below. The state claimed that the bond was confiscated, and applied to the court in which the suit was tried, for leave to defend, which was refused. Judgment was rendered, execution issued, and the money was in the hands of the marshal. The state desired to establish its title before the money was paid over to the obligees. Two of the judges thought that there was no ground for relief in equity. The other judges, with hesitation, concluded otherwise, and the basis of their judgment was, that as the money was in the hands of the marshal it was in the custody of the law, and that it was better that it should remain there until the law should adjudge to whom it belonged; in other words, that it was equitable to stay the money while it was yet in the custody of the law till the right to it could be tried at law. This is the scope of the decision.

Osborn v. U. S. Bank, 9 Wheat. [22 U. S.] 738, involved a franchise. The state of Ohio proposed to expel a branch of the United States Bank from the state by process of taxation. By an unconstitutional law of the state, the auditor was directed, in collection of the tax, to levy his warrant on the money and property of the bank. It was held that this was not the case of an ordinary trespass; that it was the destruction of a franchise, and amounted to expulsion of the bank from the state; that the tax would be annually levied and so that it would become a continuing wrong; that the injury done by denying to the bank the exercise of its franchise, could not be accurately calculated; that there was no remedy whatever against the principal—the state—for the injury; that the remedy would be only against the agent of the state; that no agent could make compensation for such an injury, and so that the remedy at law would be one in name merely, and that the injury would be absolutely irreparable. For these reasons, to preserve a great franchise for the future, and to prevent its essential destruction, it was held that equity should interpose by injunction.

Upon examination of Ford v. Douglas, 5 How. [46 U. S.] 143, I do not think the case involves any question or principle such as we have here.

Pennock v. Coe, 23 How. [64 U. S.] 117, holds that one bondholder of a class covered by a mortgage given to secure that class of bonds, cannot, by getting judgment at law, be permitted to sell, and will be restrained from selling, a portion of the property devoted to the common security, because it would give him an inequitable preference over other bondholders of the same class, and would disturb the pro rata distribution in case of a deficiency; and moreover, would have the effect to prejudice a superior equity of bondholders under a prior mortgage. This is but the enforcement of a familiar principle in equity, such as is recognized in Freeman v. Howe, 24 How. [65 U. S.] 450.

In Oelrichs v. Spain, 15 Wall. [82 U. S.] 211, there was involved an element of trust, which always confers jurisdiction in equity, and also the consideration of a multiplicity of suits.

Watson v. Sutherland, 5 Wall. [72 U. S.] 74, is much relied on to support the present application. In that case a creditor of A. levied on goods consisting of a stock in retail trade which was in the possession of B., and which it was alleged A. had, in fraud of his creditors, conveyed to B. B. was a young man recently established in trade, and was doing a profitable business; the stock was suitable for the current season and intended to be paid for out of the sales, and in fact his purchase from A. was in good faith on his part. The court held that the execution sale should be enjoined. Here were several elements of fact which furnished ground for equitable relief. B. had purchased the goods to establish himself in business. He expected to pay for them out of the sales. He had commenced business and had established a profitable trade. To take from him the property was to break up his business, destroy his credit and render him insolvent. As the court say, "commercial ruin might be the effect of closing his store and selling his goods,"

which had been purchased as the foundation for a business and as his beginning in business life. Here it was evident that the value of the goods alone would not compensate him for the injury, because other consequential damages must result, which could not be recovered in an action at law; so the remedy at law was not complete and adequate. Mr. Justice Davis in the opinion, says: "It is well settled that the measure of damages if the property were not sold, could not extend beyond the injury done to it, or if sold, to the value of it, when taken, with interest from the time of the taking down to the trial. * * * Loss of trade, destruction of credit, and failure of business prospects are collateral damages, which it is claimed would result from the trespass, but for which compensation cannot be awarded in a trial at law. * * * The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case, must depend altogether upon the character of the case, as disclosed in the pleadings." In this case it would seem very clear that the remedy in equity could alone furnish efficient relief.

Of course as ground for the refusal of an injunction, it is not enough to say that there is a remedy at law. It must be plain and adequate, or in other words as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity. Watson v. Sutherland, supra. And "where the remedy at law is of this character, the party seeking redress must pursue it. In such cases the adverse party has a constitutional right to a trial of the issue of fact by a jury." Oelrichs v. Spain, 15 Wall. [82 U. S.] 228.

The general rule in relation to the application of the remedial powers of courts of equity to compel the specific delivery of personal property to which another person has a right is stated by Mr. Story, as follows: "Ordinarily, in cases of chattels, courts of equity will not interfere to decree a specific delivery, because, by a suit at law a full compensation may be obtained in damages, although the thing itself cannot be specifically obtained; and where such a remedy at law is perfectly adequate and effectual to redress the injury, there is no reason why courts of equity should afford any aid to the party." 2 Story, Eq. Jur. § 708. And Willard, in his Equity Jurisprudence (pages 364, 365), says: "If there be nothing in the case but title to the chattel in the plaintiff on the one side, an unlawful withholding of possession by the defendant, and the chattel be one capable of being estimated in money and compensated in damages, there will be no occasion to depart from the ordinary remedies at law."

Now, bearing in mind what is the test of equity jurisdiction, it must be said of the case at bar, that it presents no peculiar or extraordinary features, and that it is plainly distinguishable from the cases that have been noticed, in which relief by injunction was successfully invoked. Why is not complainant's remedy at law, taking the facts as averred in the bill, plain and adequate? She alleges that she took possession of the property in question under her mortgage. She in effect claims legal title. She took possession and held the property for one purpose only, namely, to sell and convert it into money for satisfaction of her debt. The property is not of peculiar character or value. A recovery of its value affords complete compensation. Whatever damages she may sustain by execution sale of the property can be completely repaired at law. There was some discussion on the argument as to whether she could maintain trover or replevin in this court. Upon that question I forbear to express an opinion. But undoubtedly she could maintain trespass or trover against the marshal, if her claim be well founded, in the state court. It is said that she cannot maintain replevin in the state court. And so it was argued that her remedy at law was not adequate unless she could have the benefit of all possible legal remedies. But it does not follow that because she may not be able to maintain replevin, an action to recover compensation in damages, does not afford adequate remedy. Plain and adequate remedy at law does not mean an ability to resort to every remedy which the forms of legal procedure give. If any form of action at law will give a complete and adequate remedy, then she is within the principle which tests the right to resort to equity.

In an action at law for the alleged trespass, or for conversion of the property, the measure of damages would be the value of the property when taken, with interest from the time of the taking to the time of the trial, and this would under the facts as averred in the bill, cover all damages sustained. Moreover in determining value, the complainant would not be restricted to amounts realized for the property by the marshal on execution sale. She would be at liberty to recover actual value, though the marshal might not have realized one-half such value.

Application for injunction denied.