## James H. Gilbert, Sheriff, v. Samuel Block, Receiver.

1. CHATTEL MORTGAGES—*Foreclosure in Equity.*—While bills to foreclose chattel mortgages may, under a proper showing, be maintained, it is not the case that every pledgee of personal property, in possession of and having power to sell the same, can at any time, his debt being due, call upon a court of equity to take possession of and sell the pledge for the purpose of, by foreclosure, satisfying the lien thereon.

2. COURTS OF EQUITY—*Functions to Act as an Agent.*—It is not one of the functions of a court of equity to supervise or carry on the business of parties between whom or about whose affairs there exists no controversy. If parties are in accord as to their respective rights, they have, as a rule, no occasion to apply to a court of equity to act as their agent in caring for their property.

3. COURTS OF EQUITY—*Foreclosure of Chattel Mortgages.*—A court of equity will not entertain a suit to foreclose a chattel mortgage where it does not appear by the bill that there was any controversy between

the parties thereto, or that the complainant either needed or sought any relief as against the defendants.

4. COURTS OF EQUITY—*Extent of Jurisdiction.*—The jurisdiction of a court of chancery does not extend to the appointment of a receiver and the taking possession of personal property, upon the mere allegation that parties have, without right, taken the possession of a part of it from its rightful owner.

5. RECEIVER—*Effect of Appointment.*—The appointment of a person receiver of property, is in effect the issuance of a *quasi* injunction in respect to the same.

6. TRUSTEE—*Can Not Shift his Burden on a Court of Equity.*—The fact that a person holds property in trust, does not warrant his application to a court to relieve him from his burden. It is the duty of directors, clerks, agents, employes of every kind, to discharge the duties they have undertaken, be faithful to the trust imposed on them, and they can not at will shift their burden upon the shoulders and conscience of a chancellor.

7. TRUSTEES—*When They May Apply to a Court of Equity.*—Trustees may sometimes, when in doubt as to what the law requires of them, apply to a court of equity for instruction and guidance.

8. RECEIVER—*Purpose of his Appointment.*—It is only when the court has jurisdiction to appoint a receiver that it may do so, and thus, by itself taking possession of property, compel parties to resort to it for leave to prosecute suits at law for the possession of or attachment of the property.

9. PARTIES—*Rights of Persons Not Made Parties.*—Courts do not favor proceedings wherein an attempt is made to affect the rights of persons not made parties.

10. RECEIVER—*Appointment of, a Peremptory Measure.*—The appointment of a receiver is one of the most difficult and embarrassing duties of a court of equity. It is a peremptory measure, the effect of which, temporarily, at least, is to deprive of his property a defendant in possession, before a final decree is reached determining the rights of the parties.

11. RECEIVER.—*What Must Appear to Warrant the Appointment.*—To warrant the interposition of a court of equity by the aid of a receiver it must appear that possession of the property was obtained by the defendant through fraud, or that the income from it is in danger of loss from the neglect, waste or misconduct of the defendant.

12. RECEIVER—*Notice of Application for Appointment.*—Courts of equity are exceedingly averse to the appointment of receivers upon *ex parte* application, and it is the settled rule to require notice of the application to be given to the defendant.

**Memorandum.**—Bill to foreclose a chattel mortgage. Appointment of a receiver, etc. In the Circuit Court of Cook County; the Hon. SAMUEL P. McCONNELL, Judge, presiding. Heard in this court at the October term, 1893, and order reversed. Opinion filed January 22, 1894.

The statement of the case is contained in the opinion of the court.

MOSES, PAM & KENNEDY, attorneys for appellant.

FRANK O. LOWDEN and HAMLINE, SCOTT & LORD, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

On the 26th day of October, 1893, Emanuel Frankenthal filed his bill of complaint against Charles E. Frankenthal, Joseph Freudenthal and Henry Adler, doing business under the name of Frankenthal, Freudenthal & Co., alleging that the defendants, as partners, being indebted on the 20th day of October, 1893, to him, complainant, in the sum of $111,382.97, for borrowed money and interest, on the day last named executed to him their promissory notes therefor, payable on demand, and to secure the same, on the 21st day of said month executed to him a chattel mortgage; that complainant immediately took possession of the property described and covered by said mortgage, and retained exclusive possession and control of the same until the 25th day of said October, "when sundry parties, without right, invaded his possession and took from him by replevin certain of said property, and still hold the same; that near midnight certain other parties took possession without right, of the remainder of the property, and still hold such possession, and complainant avers that other persons are threatening and intending, without right, to take possession of portions of the property, and deprive complainant of the security of the mortgage; that the mortgage remains due and unpaid. The complainant therefore prayed the aid of the court in the foreclosure of the mortgage, the sale of the property and the application of the proceeds toward the payment of the indebtedness for which it was alleged to be scant security, being, as alleged, of a value not exceeding $80,000. The complainant further averred that pending said suit, the prop-

erty is in great danger of waste, deterioration and depreciation, and its continued care and custody will produce great loss and expense, and it would be for the interest of all parties that a receiver be appointed to take possession and convert the property into money to abide the event of the suit."

The bill had annexed as an exhibit thereto a copy of the chattel mortgage. The property thereby conveyed is described as the " goods and chattels situated in store occupying the basement, first, third and fifth floors of 240–242 East Monroe street; all the stock of men's furnishing goods, all fixtures, counters, shelving, sewing machines and all other machinery therein situated; all men's furnishing goods and piece goods, whether manufactured, unmanufactured or in the process of manufacture, as well as all tools therein situated. Also all merchandise and personal property belonging to or once in, and which shall hereafter be returned to said store, or which may be now in transit to said store from any of our customers; also the lease of the premises made by John V. Farwell, Jr., trustee, and Cornelia F. Woolley, to us, and running from January 1, 1893, to December 31, 1895. All merchandise on hand in original packages is excepted from this mortgage."

The mortgage provides that mortgagors may retain possession of the goods and chattels and keep and use the same until they shall make default in the payment. The mortgage contains the usual clauses of chattel mortgages on printed forms, authorizing the mortgagee to take immediate possession of the property in case of default, to pursue the same wherever it may be found, and enter any of the premises of the mortgagor, with or without force or process of law, wherever the chattels may be, or be supposed to be, and search for the same, take possession of, and remove and sell them at public auction to the highest bidder, upon ten days notice, or at private sale, or without notice, for cash, as the mortgagee may elect, and to retain all costs and charges for pursuing, searching for, taking and removing, storing and selling the chattels, and all prior liens thereon, together with the amount due and unpaid on the notes, rendering the surplus, if any, to the mortgagors.

The court, upon the day the bill was filed, made the following order: "Upon reading and filing the verified bill of the complainant, and the appearance of the defendants entered herein, and that they had due notice of the motion of the complainants for the appointment of a receiver in accordance with the prayer of the bill, on motion of complainant, it is ordered that Samuel Block be appointed receiver of so much of the property described in the mortgage, a copy of which is annexed to complainant's bill, as is covered by said mortgage, with full power to take possession of and sell the same for the best price that he can obtain."

On the second day of November, the receiver filed his petition, setting forth that for a time after his appointment, the American Savings Bank "illegally withheld possession of a portion of the goods of which he was appointed receiver, and that during said time the sheriff of Cook county, with the connivance of said bank, secured access to the premises where such goods were, for the avowed purpose of seizing such goods and removing the same under certain writs of replevin and attachments issued by the courts of Cook county, after the appointment of him, said receiver, and that said sheriff threatens to maintain his possession and prevents petitioner from taking possession. That the sheriff and his deputies are now engaged in executing said writs upon said property, and are seizing the same and refuse to recognize the right of the receiver to the same, although the sheriff and deputy sheriffs and attorneys for the plaintiffs in the attachment and replevin suits are fully informed of petitioner's right, power and authority and title to same."

The court thereupon ordered that the said James H. Gilbert, sheriff of Cook county, and his deputies and agents, be enjoined and restrained from proceeding or attempting to proceed in the levy of any writs of replevin or attachment issued in the suit, in which said Charles E. Frankenthal, Joseph Freudenthal, Henry Adler, Emanuel Frankenthal or Samuel Block are named as defendants or garnishees

on any property situated in the basement of the first, third, fourth and fifth floors of numbers 240–242 East Monroe street, Chicago, and also be enjoined and restrained from interfering in any manner with said property or with the complete and full possession thereof by said receiver, and from interfering with said receiver in taking possession thereof, and from claiming or asserting any possession thereof by virtue of any execution of said writs hitherto, or by reason of any attempted levy thereof, or in any other way interfering with said property except by leave of this court. From this order the sheriff appealed.

Undoubtedly, cases may arise in which a court of equity will take jurisdiction of a suit to foreclose a chattel mortgage or of controversies that grow out of the rights acquired by the mortgagee, but we do not think that the bill in this case presents a case for the interposition of a court of equity. It is not one of the functions of a court of equity to supervise or carry on the business of parties between whom or about whose affairs there exists no controversy. If parties are in accord as to their respective rights, they have, as a rule, no occasion to apply to a court of equity to act as their agent in caring for their property.

It does not appear by the bill in this case, that there was any controversy between the parties thereto, or that the complainant either needed or sought any relief as against the defendants. The only complaint made in the bill is of the action and the threatened and feared action of persons neither named in or made parties thereto, and it is manifestly as a protection against such persons that the bill is aimed.

There is a class of bills, known as " bills of peace " and actions *quia timet*, but the complainant's case does not come within any of the grounds on account of which bills of peace or actions of *quia timet* may be maintained. Pomeroy's Eq. Jurisprudence, Sec. 246 to 258 and 1393.

Had the complainant filed this bill, making no one but himself a party thereto, asking, as he did, that because of the allegations thereof a receiver be appointed to take pos-

session of the mortgaged property, convert the same into money, and apply the proceeds to the payment of the secured debt, the court would not have granted so strange a request.   Jones v. Bank, 17 Pac. Rep. 272–276, 277; High on Receivers, Sec. 17; Baker v. Admr. of Backus, 32 Ill. 79–95, 96.

The case is not materially changed by the fact that the mortgagors are made parties, when it does not appear that there is any dispute or question which the court is asked to settle or adjudicate upon, nor any equitable thing to which the complainant is entitled from the defendants which they are not willing and able to give.

Briefly stated, as regards the parties to this bill, it is a mere application to the court to appoint a receiver to do their business for them; to act as the salesman of their property, about which they have no dispute, and concerning their interests in which they have no controversy.

In this regard the court is asked to appoint, in respect to their interests in this property, a guardian for them.

If they were *non compos* or under disability, some court might do this, but a court of chancery is not authorized, upon the mere request of one or more parties, to take into its hands the custody and administration of their affairs; something more must be shown than that the parties believe the court to be more competent to do their business than they are themselves.   Schultz v. Jerrard, 3 Atl. Rep. 265.

As we have already said, the bill is not aimed at—is not to obtain relief from the defendants thereto; the persons against whom the proceeding is directed are the " sundry parties," not named, who, it is alleged, without right invaded the complainant's possession and took from him by replevin " certain of said property and still hold the same," and the other unnamed parties, who " are threatening and intending, without right, to take possession of other portions of the property."

Why, instead of filing this bill, the complainant did not or may not resort to his action at law against these parties is not shown.

Gilbert v. Block.

The jurisdiction of a court of chancery does not extend to the appointment of a receiver and the taking possession of personal property upon the mere allegation that parties have, without right, taken possession of a part of it, and others are threatening to take more of it from its rightful owner. Mothe v. Fisk, 8 Bissell, 493, 501.

Something more than this must be shown. It is fairly inferable from this bill, that the unnamed parties who have taken and are threatening to take possession of portions of the mortgaged property claim a right so to do, but if they did not, the case would not be one for the interposition of a court of equity. Merchants & Manufacturers Nat. Bank v. Kent, 43 Mich. 292.

A great number of persons in this city might truthfully allege that portions of their specified property had been stolen from them, and that other parties were planning to steal more, and the court might, upon such showing, be asked to interfere for the protection of, and to appoint a receiver of, such property, selling the same and applying the proceeds to the use of the owners thereof; the court would have no jurisdiction to so act.

By obtaining the appointment of a receiver, the complainant sought to deprive " sundry parties " of their plain legal rights. All persons who believed themselves entitled to the possession of any of this personal property, had a right to commence' appropriate actions therefor, and to have suitable writs for the seizure of such property, and all persons who believed themselves entitled to remedies by attachment of or by levy upon any of this property, had an unquestionable right to proceed in a lawful manner in the courts of the country to an attachment of or a levy upon these goods.

The bill shows no ground for depriving any of these unnamed parties of their plain legal rights in this regard, and the bill also fails to show why, if such proceedings are or will be without right, the complainant has not a plain and adequate remedy at law in respect thereto.

The appointment of a person receiver of property is, in effect, the issuance of a *quasi* injunction in respect to the

same.    High on Receivers, Secs. 163, 164, 165; Gravenstine's
Appeal, 49 Penn. St. 310, 321.

Complainant was not entitled to an injunction forbidding
interference by writs of replevin or otherwise, with his pos-
session of this property.

It is urged that the trust relation existing between the
mortgagee, who has taken possession of the mortgaged prop-
erty, and the mortgagor, constitutes a basis for the jurisdic-
tion of a court of equity.

The fact that one holds property in trust does not war-
rant his application to a court to relieve him from his bur-
den, and itself do what he should.    The greater portion of
all personal property is in the possession of, and managed
by those who are exercising a trust.    It is the duty of direct-
ors, clerks, agents, employes of every kind, to discharge
the duties they have undertaken, be faithful to the trust
imposed on them, and they can not at will shift their burden
upon the shoulders and conscience of a chancellor.

Trustees may sometimes, when in doubt as to what the
law requires of them, apply to a court of equity for instruc-
tion and guidance.    The bill of complaint in this case did
not ask for guidance, but for an administrator.

It is true, as is urged, that notwithstanding the appoint-
ment of this receiver, parties might have applied to the
court for leave to take from him by writs of replevin, or
otherwise, possession of this property, and that the court
might have accorded to them such right, but their right to
sue out and have executed writs of replevin or attachment
can not, under the allegations of this bill, be made to depend
upon the discretion of a court of chancery.    It is only when
the court has jurisdiction to appoint a receiver that it may
do so, and thus, by itself taking possession of property, com-
pel parties to resort to it for leave to prosecute suits at law
for the possession of or attachment of such property.

In the case at bar, we are not embarrassed by any ques-
tions that might have arisen from a disregard of the order
appointing a receiver to take possession of this property, and
an interference with his possession, followed by proceedings

for contempt. The sheriff has appealed from an order forbidding him to take or assert possession, and such order, as well as the order appointing the receiver, is found to have been unwarranted.

The order of the Circuit Court enjoining and restraining appellant will be set aside. Order reversed.

Mr. Presiding Justice Shepard.

I am unable to concur in the opinion of the majority of the court, if thereby this court is to be committed to the doctrine that as between the parties to a chattel mortgage whose relations are amicable, the mortgagee may not resort to a court of equity for the purpose of foreclosing his mortgage, and having done so, may not be protected by the process of injunction against seizure of the property from the possession of a receiver appointed in the foreclosure suit, by third persons not parties to the bill.

Mr. Justice Waterman, opinion on rehearing.

On a petition for rehearing filed in this case, there is set forth a summary of proceedings had in the court from whose order the appeal in this cause was taken, and action had, not only by appellant, but by various creditors of the mortgagor, which proceedings and action are said to have taken place subsequent to the injunction ordered by the Circuit Court, and before the judgment of this court. It is said that the judgment of this court has left these proceedings and the rights of the parties thereto "in inextricable confusion." We have no knowledge as to any of the matters thus described, save what we have learned from the summary of counsel given in the petition for a rehearing.

What the rights and remedies of the parties thereto are, we can not now say. It sometimes happens that out of litigation itself arises such conditions as warrant the interposition of a court of equity; and it may be that it is or will become necessary that a bill be filed and the chancellor be called upon to remove the confusion said by counsel to exist. See Pomeroy's Eq. J., Secs. 174 and 175.

This court did not hold that a bill to foreclose a chattel

mortgage can not be maintained. The court did hold "that the bill in this cause presents no case for the interposition of a court of equity." What the character of the bill would have been, had all the persons whose interests were aimed at been, under proper allegations, parties to it, it is unnecessary to discuss.

The bill shows that October 20th, the defendants gave their promissory note to the complainant; that on the following day the defendants executed to the complainant a chattel mortgage upon a large stock of goods, and that the complainant immediately took possession of the same and remained in exclusive possession and control of the same until the 25th of October, four days, when sundry parties took from him by replevin certain of said property and still hold the same, and that near midnight certain other parties took possession without right of the remainder of the property and still hold the same, and that other persons are threatening and intending without right to take possession of portions of the property, and deprive complainant of the security of his mortgage which is due and unpaid.

The notes to secure which the mortgage was given were each dated October 20th, and were payable on demand.

The only parties to the bill were the mortgagee and the mortgagors. Upon the day the bill was filed the defendants appeared by counsel, and having had notice of the application for the appointment of a receiver, made no opposition thereto.

The bill does contain a prayer for the foreclosure of the mortgage, but it shows no proper ground for the aid of a court of equity to effect such foreclosure; on the contrary it shows that as soon as the mortgage was made, the mortgagee took complete possession, and that he has, by virtue of the mortgage, power to sell the mortgaged property at public or private sale. It fails to show that there is anything in dispute between the parties or anything which the complainant is entitled to from the defendants which they have withheld or withhold. It is not against the defendants that the bill seeks relief, but against persons not parties thereto.

While bills to foreclose chattel mortgages may, under a proper showing, be maintained, it is not the case that every pledgee of personal property, in possession of and having power to sell the same, can at any time, his debt being due, call upon a court of equity to take possession of and sell the pledge for the purpose of, by foreclosure, satisfying the lien thereon.

No complaint is made of anything done or refused by the defendants; the entire proceeding is evidently collusive between the parties thereto. By the appointment of a receiver, persons evidently well known, but whose names were not mentioned, were deprived of plain legal rights. Had the persons whose right to proceed at law against the mortgaged goods was by the receivership cut off, been made parties to the bill, they might not only have objected to the appointing of a receiver, but might have appealed from the order of appointment.

By, without their knowledge, obtaining a receiver, the complainant obviated the danger of objection and appeal.

The persons against whom the bill was aimed were deprived of an opportunity to be heard, placed at a disadvantage, their rights foreclosed by a proceeding of which they had no notice.

The first maxim in the administration of the law is " *audi alteram partem.*"

Courts do not favor proceedings wherein an attempt is made to affect the rights of persons not made parties.

According to the allegations of the bill the mortgaged property, after coming into the possession of the complainant, had all been taken from him, some of it by legal process, and the remainder in other ways.

From the possession thus acquired by persons not parties to the bill, the receiver was given " full power to take" the mortgaged property and sell the same for the best price he could obtain.

Walker v. Gibson, 35 Ill. App. 49, contains an account of a proceeding like this, to affect the rights of persons not parties to the bill, by the appointment of a receiver, and

there, as here, the order of appointment was declared to be unwarranted.

We are not aware of any case in which an order appointing a receiver to take possession and sell property in the hands of persons not parties to the bill has been sustained.

The appointment of a receiver is one of the most difficult and embarrassing duties which a court of equity is called upon to perform. It is a peremptory measure, whose effect, temporarily at least, is to deprive of his property a defendant in possession, before a final decree is reached by the court, determining the rights of the parties. Bank v. Gage, 99 Ill. 207-209; High on Receivers, Sec. 3.

The same author in section 11 says:

"To warrant the interposition of a court of equity by the aid of a receiver * * * it must appear that possession of the property was obtained by the defendant through fraud, or that the income from it is in danger of loss from the neglect, waste or misconduct of the defendant;" and in section 7: "But in appointing a receiver the court goes still further, since it wrests the possession from the defendant. Receivers are appointed to take property out of the possession of defendants, not to seize goods or lands in the keeping of strangers to the proceeding.

"The bill in this case did not ask to have a receiver appointed of anything which the defendants, or any agent of theirs, had possession of; on the contrary the bill shows that the defendants had parted with all possession of the mortgaged property; the order appointing a receiver was therefore unwarranted." High on Receivers, Sec. 660; 2 Jones on Morts., Sec. 1558; Whiteworth v. Whydon, 2 MacGordon 52; Sea Ins. Co. v. Stebbins, 8 Paige (N. Y.) 565.

Courts of equity are exceedingly averse to the appointment of receivers upon *ex parte* application, and it is the settled rule to require notice of the application to be given the defendant. Devoe v. Ithaca Ry. Co., 5 Paige 521; Arnold v. Bright, 41 Mich. 210; High on Receivers, Secs. 111 and 112; Beach on Receivers, Sec. 134.

Notice was in this case given to the defendants, from

whom nothing was to be taken, but no notice was given to the persons who were to be dispossessed. Manifestly, the parties in possession were not made parties lest they might object to what the complainant wished to have done.

Counsel ask if the complainant is not entitled to cut off by foreclosure the rights of the "sundry" parties who have levied upon or taken possession of the mortgaged goods, or to foreclose subject to such rights.

Surely the distinguished counsel would not have attempted to cut off the rights of "sundry" parties, without making them defendants to the proceeding; while if the foreclosure is to be subject to their rights, neither their actual possession or right to proceed at law, can be interfered with.

It is the case, as is stated in section 674 of High on Receivers, that a receiver has been allowed in behalf of the mortgage of chattels which have been seized under writs of attachment which were subordinate to the mortgage; but in the case in which this was done, Crow v. Red River Co. Bank, 52 Tex. 362, the court said: "The bank (the mortgagee) could not intervene in the attachment writs for want of jurisdiction in the County Court over its claim, and was virtually remediless unless the jurisdiction of the District Court could be invoked, and other creditors restrained from further proceedings under their attachments, until the respective rights of all the parties could be ascertained."

The complainant was not, in the case at bar, remediless, unless he was permitted to resort to a court of equity.

A decree against the defendants to his bill would have been of no practical benefit to him.

The answer of the defendants, filed sixteen days after the receiver was appointed, admitting, as it does, the allegations of the bill, and as a kind of cross-bill, asking that the complainant account for the proceeds of accounts assigned to him, does not establish that the bill presents a case showing that there is set forth in it a cause for the interposition of a court of equity, or the order appointing the receiver.

The petition for a receiver will be denied.

MR. JUSTICE GARY.

Extraordinary remedies are losing, in their indiscriminate application, their title.

Block, the receiver, has no interest in the simulated controversy appearing on this record, and no right to apply for the injunction from which this appeal is prosecuted. Beach, Receivers, S. 258; High, Receivers, S. 181; 20 Am. & Eng. Ency. of Law, 228.

He was not applying for protection in a possession he had obtained, but for the interposition of the jealous and sensitive dignity of a court of chancery, as a bar to a resort by strangers to process of law in the enforcement of their alleged legal rights, that thereby he might obtain possession.

This incapacity of a receiver has been often overlooked. We did it in Sercomb v. Catlin, 30 Ill. App. 258, and United States Ex. v. Smith, 35 Ill. App. 99, and the Supreme Court followed us in the same cases, 128 Ill. 556, and 135 Ill., 279.

Numerous cases can also be found, where the United States Circuit Courts, especially in operating insolvent railways, have exercised a paternal authority at the instance of receivers, but no calmly considered case, where the point has been made, justifies a receiver appointed only to take possession of and sell property—unless acting under some statute—in originating proceedings to make more effectual the remedy of one of the parties.

If the party neglects his interests it is no business of the receiver.