BASHFORD-BURMISTER COMPANY ET AL. *vs.* THE ÆTNA
INDEMNITY COMPANY (THEODORE H. MACDONALD,
INSURANCE COMMISSIONER, *vs.* THE ÆTNA IN-
DEMNITY COMPANY).

First Judicial District, Hartford, October Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

As a general rule it is within the discretion of the court which appoints. a receiver to determine whether it will itself adjudicate all claims presented, or will allow one or more of them to be litigated elsewhere. This rule, however, must yield to the express provisions of an Act of Congress which creates a new right and prescribes that the remedy therefor must be by an action in a certain Federal court "and not elsewhere"; for the jurisdiction thus conferred is exclusive of every other court, Federal or State.

A judgment of such Federal court can, however, be enforced against the property of the defendant in the hands of a receiver in another State, only by intervention in the receivership court and by its order.

In the present case the Superior Court of this State authorized and directed its receiver to discontinue any further defense, theretofore authorized, in a suit which had been brought under an Act of Congress (U. S. Compiled Statutes, 1916, § 6923) upon a contractor's surety bond given by the defendant, and which was maintainable, by the terms of the Act, only in the Federal District Court of Arizona, provided the claimants in such suit would consent to accept a judgment for a prescribed percentage of their respective claims. This they agreed to do, and judgment was rendered accordingly by the Federal District Court in Arizona. Upon filing this judgment with the receiver here, he refused to accept it upon the ground that the time for filing claims had expired. *Held:—*

1. That the order of compromise, which exhausted whatever discretion the court had, was a recognition by it that the claims were then before it and that they were valid to the extent of the specified percentage; that upon the rendition of the judgment by the Arizona court pursuant to the compromise order, the judgment became an allowed claim; and that it only remained for the receiver to report this judgment to the court and for the court to direct its entry upon the list of allowed claims.

2. That no sufficient reason existed for excluding these claimants from sharing in the assets of the Indemnity Company which were in the hands of the receiver and available for distribution.

The receiver and certain creditors whose claims had been allowed, contended that the Arizona claims in question ought not to be listed and permitted to share in the assets, because of laches in their presentation. *Held* that upon the facts disclosed by the record there was no merit in this contention; that the intentional failure of the receiver to disclose his appointment to the Arizona claimants, who had no knowledge of the receivership until shortly after the compromise judgment was rendered, and their prompt action thereafter, precluded the receiver and other creditors from urging a lack of due diligence upon the part of these claimants.

In the Arizona suit the defense was conducted, and the stipulation for a compromise judgment was signed, in the name of the Indemnity Company. *Held* that this was immaterial, inasmuch as the statute (§ 6083) permitted the receiver to act either in his own name or in the name of the corporation, and as the acts done were in fact the authorized acts of the receiver.

One in whose behalf or under whose direction a suit is defended will be bound by the judgment or decree rendered in it; and parol evidence is admissible to show the real party in interest, though he conducted the defense in the name of another.

It did not appear that the Superior Court in passing the compromise order, based it upon the exclusive jurisdiction of the Federal court in Arizona. *Held* that this was not essential; that the court had unquestioned power to refer the determination of claims to a court of another jurisdiction.

The denial of a creditor's application for an extension of time in which to intervene in receivership proceedings and present his claim, which had in legal effect already been presented and allowed, although unknown to him, does not prevent him, under the doctrine of *res judicata*, from afterward applying to the court, upon learning all the facts, for an order requiring the receiver to report the claim to the court as one already duly presented and allowed. The two applications are not for the same cause or object and the doctrine of *res judicata* does not control the situation.

Argued October 2d, 1918—decided January 30th, 1919.

APPLICATIONS in receivership proceedings by foreign judgment creditors, praying for an order directing the receiver to report their respective claims as duly presented and allowed, and entitled to share in dividends thereafter declared, brought to and reserved by the Superior Court in Hartford County, *Gager, J.*, upon a finding of facts, for the advice of this court. *Judgment advised for claimants.*

On August 15th, 1906, the Ætna Indemnity Company became surety on a bond to the United States in the penal sum of $120,063.74, conditioned that one Warren B. English faithfully perform a contract for the construction of twenty-three buildings on the Military Reservation at Whipple Barracks, Arizona. Said bond provided, among other things, that said English should "promptly make full payments to all persons supplying him labor or materials in the prosecution of the work provided for in said contract." This bond was given under and pursuant to the provisions of the Act of Congress of February 24th, 1905 [33 Stat. at Large 811, Chap. 778, U. S. Comp. Stat. (1916) § 6923]. The buildings required by said contract were completed, and final settlement for the same was made by the United States about November 21st, 1908, but said English did not pay for all labor and materials that went into the construction of said buildings. The applicant Joslin claims as assignee of original holders of claims aggregating $71,798.30; Dustin claims as assignee of the Prescott Iron Works on a claim for $211.13; and the Bashford-Burmister Company claims to be an original creditor of said English in the sum of $2,005.29.

Acting under the provisions of said Act of Congress, said Dustin, on August 11th, 1909, brought an action in the District Court of the Fourth Judicial District of the Territory of Arizona, which court had jurisdiction of the matter in controversy, in the name of the United States as the plaintiff, and against said English and the Ætna Indemnity Company, defendants, alleging a breach of the Ætna bond and the failure of the United States to bring suit on said bond within the six months next after the final settlement of said contract. On October 7th, 1909, said Joslin intervened in said action for the amount of $56,727.98, and on October

13th, 1909, the Bashford-Burmister Company intervened for the amount of $2,296.31.

The Ætna Indemnity Company employed counsel in San Francisco and Arizona who duly entered in said court to defend said action. Said action had not been tried and was pending January 7th, 1911, when the Ætna Indemnity Company was placed in the hands of a temporary receiver, Theodore H. Macdonald, in proceedings in the Superior Court for Hartford County. The temporary receiver was made permanent February 7th, 1911, and on September 13th, 1911, J. Birney Tuttle was made a co-receiver. Said Macdonald died soon after the appointment of said Tuttle and said Tuttle then became and now is the sole receiver of said Indemnity Company.

Prior to March 1st, 1911, the receiver obtained and served the usual order of notice to creditors limiting the time for presenting claims to six months from March 1st, 1911, and this time was subsequently extended to January 1st, 1912. Said suit in Arizona being in the name of the United States as the nominal plaintiff under the provisions of said Act of Congress, the notice was sent to the United States District Attorney for the District of Arizona, and it did not appear that said attorney ever communicated said notice to the claimants therein. None of the applicants within the time limited presented any claims to the receivers, unless presentation may be inferred as matter of law from the conduct of the receivers with respect to the Arizona suit.

On January 18th, 1911, the Superior Court for Hartford County by a general order authorized the receiver to continue the defense of actions pending against the Ætna Indemnity Company in other States, of which actions there were then nearly two hundred. A lawyer, Hatton, of San Francisco, who had been in

charge of the litigation of the Ætna Indemnity Company on the Pacific coast, including said Dustin case in Arizona, was employed by the receivers to advise and assist them in relation to said Dustin action, and said Hatton continued the employment of local counsel, Cox and Langston, who had been employed by the Ætna Indemnity Company prior to the receivership, to continue the defense of said Arizona action. The receivers instructed Hatton concerning the defense of the action and that the defense should be in the name of the Ætna Indemnity Company, the corporation, and that he should not, nor should he permit the Arizona counsel, to disclose to the real plaintiffs in said action the fact of the receivership, or that the defense was being continued under the advice and at the request of the receivers; and the receivers never employed or authorized the employment of any attorney to enter the receivers as defendants in said action or to represent them as receivers upon the record, and said counsel never represented to plaintiffs or their attorney that they appeared for the receivers or had any authority to bind them. The receivers never entered an appearance on the record in the Arizona suit and were never made a party thereto, nor did the plaintiff make any motion that the receivers be made a party defendant. Attorney Hatton sent his bill to the receivers for services rendered them from January 7th, 1911, to October 1st, 1912. The entire bill amounted to more than $7,000, of which $1,000 was the charge in the action in Arizona. The Superior Court allowed Hatton fifty per cent of his entire bill, which was paid by the receivers in March, 1914. Both before and after the appointment of the receivers the Arizona suit was frequently continued by consent of counsel for the plaintiff and Indemnity Company, and the receivers urged local counsel to secure postponement of trial as long as practi-

cable. From a time soon after the appointment of the original receiver in January, 1911, the receivers and their counsel in Connecticut kept in touch with said action in Arizona through correspondence and telegrams with Mr. Hatton, continuing the defense of the action in the name of the Ætna Indemnity Company.

Sometime prior to June 25th, 1912, the receivers learned through their counsel in San Francisco that probably the Arizona suit could be compromised on a basis of sixty-two and one half per cent. At that time the receivers knew from the claims already presented that the Ætna Indemnity Company was hopelessly insolvent. On June 25th, 1912, the receivers made application to the Superior Court reciting the pendency of said action upon said bond in the Arizona court, that a further prosecution of the defense would involve much expense to the receivership, that the result was doubtful, that negotiations were pending for a settlement at sixty-two and one half per cent, that such compromise would be for the best interests of the receivership, and praying for authority to discontinue the defense upon condition that said compromise should be made and judgment entered accordingly. On the same day, the court, after hearing, found it desirable to effect a compromise on the terms proposed, and passed the following order:—

"ORDERED: That said receivers be and they are hereby authorized and directed to discontinue the further defense of said action, provided the various claimants whose claims are concerned therein consent that judgments shall be entered for the respective claimants in such sums as shall not exceed substantially sixty-two and one half per cent of their respective claims."

Pursuant to this authority and by the direction of the receivers, a stipulation for judgment was signed Oc-

tober 17th, 1912, and on December 12th, 1912, the District Court of the United States for the District of Arizona (having succeeded to the jurisdiction of the court in which the action was brought) entered a judgment upon said stipulation in favor of the applicants for the recovery from said English and the Ætna Indemnity Company of seventy per cent of the amounts due the applicants respectively, to wit: William L. Dustin, $184.80; Charles T. Joslin, $50,258.82; Bashford-Burmister Company, $2,005.29; total $52,448.91. No question was made as to the difference between the sixty-two and one half per cent mentioned in the order and the seventy per cent mentioned in the stipulation and judgment, the difference being agreed to and arising through the final adjustment of the claims.

In January, 1913, and soon after the rendition of said judgment, one Ling, attorney for the plaintiffs in said Arizona action, visited the receivers in New Haven and sought to file the judgment with them as a preferred claim. The receivers refused to accept the same, and advised Ling that the time for presenting claims had expired January 1st, 1912, and that it was then too late to file these claims.

On January 14th, 1913, each of the applicants filed in the Superior Court for Hartford County an application to intervene and present their claims, setting up, in substance, the claim and its determination and liquidation on December 12th, 1912; that it arose out of the bond of the Ætna Indemnity Company; that it had been impossible to ascertain the amount until said date, and therefore it had not been possible to present a claim to the receiver; that the claimant had no actual notice of the appointment of the receiver until January 3d, 1913, and had never received any notice of the limitation of time for presenting claims; and that immediately after December 12th, 1912, the applicant

had used all possible haste to present his claim in person. The application concluded with the prayer that the court grant the applicant permission to intervene in the receivership action and present his claim for allowance. No mention of the judgment in the Arizona court, or of the United States statute, or of any prior orders of court connected therewith, appears in the applications.

These applications, filed January 14th, 1913, were duly heard and denied by the court January 24th, 1913. No memorandum of decision was filed, and no appeal from the order denying said application was ever taken by any of the applicants. At the time said applications were prepared and presented, neither said Ling nor the counsel in Connecticut for said claimants had any knowledge of the application of said receivers and the order of the Superior Court thereon authorizing a compromise judgment upon said claims, nor of any general order of the court authorizing the defense of suits in foreign jurisdictions, and it was on the hearing upon said applications that said Ling and said Connecticut counsel first became aware of the existence of any such orders.

On February 11th, 1913, the applicants filed their applications in the Superior Court for Hartford County under which this present reservation is made. These applications, all in substantially the same form, allege the giving of said bond of indemnity under and pursuant to the amended Act of Congress of February 24th, 1905, the furnishing of labor and materials, the failure of the principal contractor, English, to pay, and the consequent liability of the Ætna Indemnity Company, the due institution of suit under the provisions of said Act of Congress on August 11th, 1909, and the pendency of said suit when the receiver was appointed. They also allege that the receiver, soon after his ap-

pointment, was advised of the pendency of the action and employed as counsel to defend the same persons who had been employed by the Indemnity Company before the receivership, and that the receivers controlled the defense of said action. The applications set forth the negotiations looking toward a compromise between counsel for the receiver and for the applicants, the stipulation of October 17th, 1912, and the judgment of the Arizona court, pursuant to stipulation, of December 12th, 1912. Each applicant further alleges that the said stipulation and judgment were made with the authority, approval and consent of the receivers, but that they refused to receive said claims under said Arizona judgment; that the application of January 14th, 1913, was immediately brought for permission to intervene and present the claim for allowance, and that the court denied said claim; that no distribution of the assets of the Indemnity Company had been made, and that the receivers had failed to report to the court the existence of said claim under said judgment; and each applicant made the following claims as to the judgment which should be rendered by the Superior Court, to wit: "First: That this court should issue an order to said receivers authorizing and directing them to report said claim to the sum of Two Thousand and Five and 29/100 ($2,005.29) Dollars as a claim duly presented to them and allowed in said sum. Second: That said claim of your petitioner should be allowed as a preferred claim under the provisions of an Act of Congress entitled 'An Act to Amend an Act approved August 13, 1894, Entitled An Act for the Protection of Persons Furnishing Materials and Labor for the Construction of Public Works,' which Amending Act was approved February 24, 1905. Third: That if the court shall be of opinion that said claim should not be allowed as a preferred claim, that said claim should be allowed

as a general claim and that your applicant should be allowed to participate in any and all dividends to general creditors which may be hereafter authorized and ordered by this Honorable Court."

The prayer for relief was in substantially the same form in each of the applications.

The receiver filed an answer, also a motion to dismiss. The applications came on for a hearing in July, 1917. The prayer for allowance as a preferred claim was abandoned. Upon the suggestion of the court the facts were found and the case was reserved for the advice of the Supreme Court of Errors upon the questions of law arising thereon.

*Lewis Sperry, Thomas G. Norris* of Prescott, Arizona, and *Harry W. Reynolds,* for the plaintiffs.

*Lucius F. Robinson* and *J. Birney Tuttle,* for the receiver of the Ætna Indemnity Company.

*Albert H. Barclay,* for the National Surety Company *et al.,* intervening creditors.

GAGER, J. The present case is a reservation upon the applications of the Bashford-Burmister Company and others, for the issuance by the Superior Court of an order to the receivers to report their respective claims as duly presented and allowed claims against the assets in the hands of the receivers of the Ætna Indemnity Company. These applications are in substantially the same form, and they arise upon the judgment rendered in the District Court of the United States for the District of Arizona in the case of the United States against the Ætna Indemnity Company upon one of its surety bonds.

The bond upon which the action is based was given

under the provisions of an Act of Congress of August 13th, 1894, Chapter 280, as amended by the Act of February 24th, 1905, Chap. 778 (33 Stat. at Large, 811, § 6923 of the U. S. Compiled Statutes of 1916). No question is made but that the action was properly brought in a court of competent jurisdiction under the statute and was pending at the time of the appointment of the receiver, and that the judgment therein in favor of the intervenors, the applicants in the present case, was entirely regular under the terms of the Act.

The parts of the Act specially relevant to the question now presented for decision, are the following, to wit: after providing for the giving of the usual penal bond by the contractor with good and sufficient sureties, the Act further provides that the bond shall contain, "the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." Then, after providing for intervention in any suit brought by the United States under the provisions of the Act, the Act goes on to say: "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials . . . shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution."

This Act is held to create a new right of action. In *United States ex rel. Texas Portland Cement Co. v. Mc-*

*Cord*, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893
(1914), the Supreme Court of the United States, in
construing the Act, said: "By this statute a right of
action upon the bond is created in favor of certain credi-
tors of the contractor. The cause of action did not
exist before and is the creature of the statute. The Act
does not place a limitation upon a cause of action there-
tofore existing, but creates a new one upon the terms
named in the statute. The right of action given to
creditors is specifically conditioned upon the fact that
no suit shall be brought by the United States within the
six months named, for it is only in that event that the
creditors shall have a right of action and may bring
a suit in the manner provided. The statute thus cre-
ates a new liability and gives a special remedy for it,
and upon well settled principles the limitations upon
such liability become a part of the right conferred
and compliance with them is made essential to the as-
sertion and benefit of the liability itself." This state-
ment was confirmed in *Illinois Surety Co.* v. *United
States*, 240 U. S. 214, 36 Sup. Ct. 321, 60 L. Ed. 609
(1916). The provision that "the suit shall be brought
in the Circuit Court of the United States in the Dis-
trict in which said contract was to be performed and
executed . . . and not elsewhere," was not in the
original Act of 1894, and operates to confer exclusive
jurisdiction of the action in the name of the United
States upon said Circuit Court. No other court, State
or Federal, has jurisdiction in such a suit to ascertain
the liability and fix its amount. *Davidson Bros. Marble
Co.* v. *United States*, 213 U. S. 10, 29 Sup. Ct. 324, 53 L.
Ed. 675 (1909); *United States ex rel. Texas Portland
Cement Co.* v. *McCord*, 223 U. S. 157, 34 Sup. Ct.
550, 58 L. Ed. 893: *United States* v. *Illinois Surety Co.*,
238 Fed. Rep. 840 (1917); *United States* v. *Boomer*,
106 C. C. A. 164, 183 Fed. Rep. 726 (1910). In *United*

*States* v. *Congress Construction Co.*, 222 U. S. 199, 32 Sup. Ct. 44, 56 L. Ed. 163 (1911), the court said of this Act: "Considering the purpose of the statute, as manifested in these provisions, we think the restriction respecting the place of suit was intended to apply, and does apply, to all actions brought in the name of the United States for the purpose only of securing an adjudication and enforcement of demands for labor or materials, whether instituted by the United States or by the creditors themselves. The reasons for the restrictions are as applicable in the one instance as in the other, and it is difficult to believe that it was intended that it should be less potent when the United States acts for the creditors than when they act for themselves. The contention to the contrary is rested largely upon the supposition that, in instances like the present, where the defendants, or some of them, are inhabitants of another district, there is an insuperable barrier to the maintenance of the action in the district wherein the contract was to be performed. But this supposition is a mistaken one, for the provision restricting the place of suit operates *pro tanto* to displace the provision upon that subject in the General Jurisdictional Act, 25 Stat. 433, Chap. 866, § 1 [U. S. Compiled Statutes, 1901, page 508], and amply authorizes the Circuit Court in the district wherein the action is required to be brought to obtain jurisdiction of the persons of the defendants through the service upon them of its process in whatever district they may be found." By the Federal Judicial Code, which took effect January 1st, 1912, the United States Circuit Courts were abolished and the district courts were made the Federal courts of general original jurisdiction.

Upon the argument in the present case the doctrine of the supremacy of the court appointing the receiver was vigorously invoked. It may be admitted that the

general rule is stated in *Porter* v. *Sabin*, 149 U. S. 473, 479, 13 Sup. Ct. 1008, 37 L. Ed. 815, to wit: "It is for that court [the court appointing the receiver], in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. . . . and no suit, unless expressly authorized by statute, can be brought against the receiver without permission of the court which appointed him." However general this rule may be, it must give way before the express provisions of an Act of Congress creating the right and the remedy, and definitely naming the court in which the suit authorized by the Act may be brought as the United States Circuit Court in the District where the contract was to be performed, "and not elsewhere." *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327 (1912); *United States* v. *Southern Dredging Co.*, 251 Fed. Rep. 400 (1918). In *Pollard* v. *Bailey*, 87 U. S. (20 Wall.) 520, 22 L. Ed. 376 (1874), a case in which a creditor of a bank brought an action against a stockholder based upon the statutory liability of stockholders, the court said: "The liability and the remedy were created by the same statute. This being so the remedy provided is exclusive of all others." The *Pollard* case was cited and the principle just stated applied, in *Middletown National Bank* v. *Toledo, A. A. & N. M. Ry. Co.*, 197 U. S. 394, 25 Sup. Ct. 462, 49 L. Ed. 803 (1905), also a stockholder liability case. The same principle was cited and approved as well-settled law in a copyright case. *Globe Newspaper Co.* v. *Walker*, 210 U. S. 356, 28 Sup. Ct. 726, 52 L. Ed. 1096 (1908).

It is apparent, then, from the express language of the Act of Congress as construed by the courts referred to, that the Superior Court for Hartford County was powerless to determine the validity and amount of the liabilities of the Indemnity Company for labor and

materials in a suit upon the bond in the name of the United States, as authorized by the Act of Congress in question. The consent of the Superior Court to such action was immaterial as a delegation of power, for the court could not delegate a power it did not possess. The judgment of the United States Court for the District of Arizona is binding in all courts where it is necessary that the amount and validity of the claim under the Act should be determined. The Act of Congress acts as a supersedeas and *pro tanto* displaces the jurisdiction of the court appointing the receiver over such an action. The judgment does not of itself affect the fund in the receiver's hands, and can only be enforced against the property of the Indemnity Company in the custody of our Superior Court, by intervention in that court and by order of that court. *United States* v. *Illinois Surety Co.*, 238 Fed. Rep. 840, 846.

It will be noticed that this exclusiveness of jurisdiction relates to an action in the name of the United States. The question is not now before us whether a claimant under a bond given under the provisions of this Act may have any claim under such a bond enforceable, as to the determination of its extent and validity, in the court of the receivership, or in any other way than by a suit in the name of the United States in the specific court designated in the Act. The judgment on which the claimants rely was obtained in a suit which strictly conformed to the provisions of the Act.

Neither is the question before us as to the duty of the court of the receivership to allow a claim based upon such a judgment whenever it might be presented to such court in a case where the judgment had been procured independently of any action of the court of the receivership or authorized conduct of the receivers in the litigation, or without their knowledge. The finding of facts clearly shows such action by the court, and such

authorized conduct by the receivers, and such knowledge of the claims, that for reasons hereinafter stated in detail the judgment in the Arizona suit should be given the *status* of an allowed claim, whether it be regarded as a judgment obtained in a statutory action in a court of exclusive jurisdiction, or in any court of general jurisdiction other than the court of the receivership.

The history of this case and the order of time show no valid reason for not permitting these claimants to share in the assets of the Indemnity Company. On the other hand, they show that the receivers' acted on the fullest information that the most correct statement of claims could have given them. The action in the Arizona court had been pending for a year and a half before the appointment of the receiver of the Indemnity Company. The pendency of this action became known to the receiver soon after his appointment; he sent notices of the order of limitation to creditors, and the pending action in Arizona being in the name of the United States as nominal plaintiff, he sent the notice to the United States District Attorney for the District of Arizona, and not to the real parties in said action, though the record in the District Court then showed who the real claimants were. The Indemnity Company had employed counsel to defend this action, and the receivers continued the employment of the same counsel to defend the suit under their direction, but in the name of the Indemnity Company alone, and in 1914, by authority of court, paid to this counsel for services to the receivership in the case from February 7th, 1911, the date of the receivership, to October, 1912, the date of the stipulation for the compromise judgment. The knowledge of the pendency of the action and the direction of its defense, dated from some time prior to March 1st, 1911, and therefore long before the expira-

tion of the time limited for presenting claims, which was January 1st, 1912. This action by the receivers was taken under the order of court of January 18th, 1911, authorizing the receivers generally to defend actions pending against the Indemnity Company in other jurisdictions. The receivers, having full knowledge, in the name of the Indemnity Company, negotiated for a compromise, and on June 25th, 1912, applied to the Superior Court for Hartford County for specific authority to compromise the claim as for the best interests of the receivership by saving large expense in conducting a defense where the result of the litigation would be doubtful. The application set out the name of the action; that it was pending in the United States Circuit Court for the District of Arizona, and was based on the bond given by the Indemnity Company to the United States as surety for one English who had a contract for the erection of government buildings in Arizona. The Superior Court authorized the discontinuance of the further defense of this action upon the entry in the Arizona court of the compromise judgment, as recommended by the receiver. Pursuant to this authority a compromise stipulation was made, and on December 12th, 1912, judgment was rendered for the intervenors, the real plaintiffs, severally, to recover amounts aggregating, in the whole, the sum of $52,448.91. The judgment was against English, the principal, and the Indemnity Company, surety, and not against the receivers by name. By special and repeated directions of the receivers everything was done in the name of the Indemnity Company alone. No information was given by the receivers or their counsel of the existence of any receivership, and it is not found that the plaintiffs learned of the receivership as a matter of fact until after the judgment was rendered.

The receivers had authority to defend and they did

defend, and finally, as above stated, presented the essential facts of the Arizona action to the court which specifically authorized the compromise judgment entered in the case and on which the claims now stand. Whether the receivers called the attention of the court to the peculiar statute under which the action was brought or not does not appear. The court had specific knowledge of the nature and amount of the claims on June 25th, 1912, and the order then passed was a recognition that the claim was before it, and that it was a good claim to the extent of the proposed compromise. It was no academic question that was being determined, but a claim or claims resulting in an agreed judgment of more than $50,000. If the order then passed meant anything, it meant that the court would, to the extent of the compromise, recognize the judgment as a valid claim. Upon the rendition of the judgment pursuant to the compromise order, the judgment became an allowed claim, and it became the duty of the receiver to report this judgment to the court and the duty of the court to direct its entry upon the list of allowed claims. Whatever discretion the court may have had was exhausted on passing the compromise order. Its judicial obligation became fixed on the date of the rendition of the judgment, and the order asked for is really but an order to the receiver to perform a clerical duty.

The receiver, and creditors whose claims have been allowed, contend that these claims should not be listed and permitted to share in the assets in the receiver's hands, for several reasons. It is claimed that the application should be denied because no claim was presented to the receiver until more than a year after the expiration of the period of litigation. As stated above, the receivers, within the time limited, had, by their action in reference to the Arizona suit, recognized these claims as claims to be defended at the expense of the receiver-

ship funds. The claim of the applicants in their first application was that they never knew of the receivership until soon after the Arizona judgment was rendered, and the contrary nowhere appears. It does appear that no notice of limitation was sent to these claimants, though they had already intervened in the Arizona suit. And it is further found that the receivers, during the entire period prior to the rendition of judgment, intentionally and by repeated instructions to counsel refrained from entering for the defense as receivers, and from procuring the receivers to be formally made parties defendant, and from disclosing the existence of a receivership to the applicants, while at the same time they actively directed the defense and procured from the Superior Court the order for a compromise and judgment thereon. The receivers, after having, under the general order of court, undertaken to defend the pending action, and after having, upon presentation of the essential facts, obtained an order for a compromise pursuant to which the compromise judgment in the Arizona court was rendered, are precluded from now disputing the binding force of this judgment because the applicants, not knowing of the receivership—which was due to the intentional failure of the receivers to disclose its existence—formally presented no claim until they learned of the receivership very soon after the judgment was rendered. Laches in presenting a claim cannot be imputed to one who under such circumstances did not know of the receivership, and certainly there was no laches in presenting the Arizona judgment to the court here in a month from its rendition in Arizona. Neither the receivers nor other creditors can, in view of the facts, be heard to say that claimants were not diligent.

That the defense was continued in the name of the corporation is of no consequence. The corporation

was not dissolved. The statute provides that receivers of a corporation shall have "power in their own names, or in its name, to commence and prosecute suits for and on behalf of said corporation; to defend all suits brought against it or them." General Statutes, § 6083. If the receiver had entered as receiver to continue the defense of the action, what more would have been necessary for a presentation of the claim than the continuance of this action by the plaintiffs knowing the receivers as such were defending? The receiver continued the defense for the benefit of the receivership; it was so alleged, in substance, in the application of June 25th, 1912, and found to be the fact by the court in making the compromise order. The local attorneys were in fact the attorneys of the receivers, employed and paid by them, authorized and directed by the receivers, who were in turn authorized by the court appointing them. Knowledge of the claim is given when the receiver has knowledge of the pending litigation. This knowledge becomes notice available to the creditor when the receiver, under authority of this court, with full knowledge of the facts, steps into the litigation and continues it to judgment. As is said in one case: "Notice of a claim is in effect given by the litigation." *Powell* v. *Leavitt*, 80 C. C. A. 43, 45, 150 Fed. Rep. 89, 91. See also *Pratt* v. *Stoner*, 78 Conn. 310, 313, 61 Atl. 1009; *Brown & Bros.* v. *Brown*, 56 Conn. 249, 14 Atl. 718; *Insurance Commissioner* v. *Commercial Mut. Ins. Co.*, 20 R. I. 7, 36 Atl. 930.

Though the stipulation for a compromise was in form the stipulation of the Indemnity Company, it was in fact the authorized act of the receivers; and to say that the receivers and the court are not bound by the judgment rendered pursuant to that stipulation, is to make the order of the court a nullity and the action of the receivers thereunder a means of misleading

plaintiffs to their harm. "It is unnecessary to inquire whether, as an abstract proposition, the doctrine of estoppel can be applied to courts as well as to individuals. It is sufficient to say that the proceedings of courts must be based upon the same principles of fairness which are ordinarily applied to the conduct of individuals." *Smith* v. *U. S. Express Co.*, 135 Ill. 279, 293, 25 N. E. 525. The situation is not unlike that of the undisclosed principal. Plaintiffs in the litigation supposed they were dealing with the attorneys for the Indemnity Company. These attorneys had been in fact attorneys for the Indemnity Company. Without the knowledge of the plaintiffs these attorneys became representatives of new principals—the receivers of the Indemnity Company—so that the plaintiffs were as a matter of fact dealing with attorneys of the receivers, and the receivers and the court authorizing them are as much bound as though the defense had been conducted openly in the name of the receivers. The underlying principle is as stated in *Smith* v. *U. S. Express Co.*, 135 Ill. 279 (25 N. E. 525): "One, in whose behalf or under whose direction the suit is prosecuted or defended, will be bound by the judgment or decree rendered in it; and parol evidence will be admitted to show who is the real party in interest, and that such party conducted the litigation in the name of another person." See also *Bank of North America* v. *Wheeler*, 28 Conn. 433, 441; High on Receivers (4th Ed.) § 268a.

As a further objection, it is said that there was no power in the Arizona court to finally determine the amount of these claims as against the fund in the receiver's hands. The answer to the first part of this objection is, as already shown, that by the express provision of the statute under which the bond was given, no court other than the Arizona court had jurisdiction over the determination of the extent and validity of the

claim in an action brought in the name of the United States.

The answer to the second part of the objection is, that by the compromise order of June 25th, 1912, the court of the receivership, as definitely as words could do it, expressly recognized the jurisdiction of the Arizona court, the existence of a claim pending against the assets in its hands, and allowed the claim to an amount not then defined in dollars and cents but definitely to be ascertained in the manner provided in the order. It may be that the order was not based upon or allowed because of the exclusiveness of the jurisdiction of the Arizona court. It can now be justified by reference to the statute. But even apart from the statute, there can be no question of the power of the court of the receivership by its order to refer the determination of claims to a court of another jurisdiction. This is clearly recognized in the cases cited in behalf of the receiver. In *Pendleton* v. *Russell*, 144 U. S. 640, 12 Sup. Ct. 743, 36 L. Ed. 574, a case which turns upon the fact, unlike the present case, that the corporation at the time of the judgment had no legal existence, the court said: "It ceased to be a pending suit; and if it were otherwise, the receiver could not take charge of any proceeding in a foreign jurisdiction by commencing an action, or defending an action, without the express authority of the court, whose officer he was, so as to bind any property or effects in his hands as receiver." In *Attorney-General* v. *American Legion of Honor*, 196 Mass. 151, 81 N. E. 966, a case in which a plaintiff recovered a foreign judgment after the appointment of receivers and then presented his claim upon this judgment, the court said: "To establish that right he had to prove his claim in this court [the court of the receivership] or get an order from this court that a judgment in the action in the foreign court should establish his right

to share in the assets here. It is for the court which has taken the assets of the insolvent into its hands for distribution and for that court alone to determine who its creditors are and what is due to them respectively." The last statement, that it is for the court to determine what is due to them, must here be taken with reference to and subject to the overriding provision of the United States statute, as already explained. Going on, the court says: "As we have said, it may in its discretion leave that issue to be determined by another court. Lowell on Bankruptcy, § 209. But in the absence of an order to that effect the subsequent judgment binds the insolvent and not the assignee or receiver of the assets of the insolvent as representative of the insolvent's general creditors. In the case at bar no order has been made authorizing the receiver to submit to courts of other jurisdictions the question whether the petitioners now before us were creditors of the defendant corporation. . . . If it is the fact that the receiver has in fact (although not authorized so to do) contested one or more of these twenty-seven claims in the courts of another State to final judgment, there is nothing to prevent this court from entering an order *nunc pro tunc* submitting the question so litigated to that court and allowing the judgment so obtained to be proved so far as it covers a debt or a disability benefit." Here is the clearest recognition of the power of the court of receivership by any proper order to delegate to any other jurisdiction the right to determine the extent and validity of claims against the fund in its hands, and the Massachusetts court even goes so far as to say that after it has already been done by the receiver without order, there is nothing to prevent the court from passing a retroactive order which will adopt and confirm the results that have followed the receivers' unauthorized action in litigat-

ing in foreign jurisdictions. And this Massachusetts case goes far beyond the requirements of the present case, quite independently of the Act of Congress, because we have the preliminary general orders of the court and the specific order as to the compromise judgment upon these claims. In *Odell* v. *Batterman Co.*, 223 Fed. Rep. 292, 298, Judge Rogers, reviewing the authorities, said: "It was therefore within the discretion of the court below to decide whether it would determine for itself the right which the appellant asserts against the premises which the court has taken into its possession, or would allow the question to be litigated elsewhere." Judge Rogers also cites with approval from 34 Cyc. 420: "Generally it is considered to be a matter within the discretion of such court [court of the receivership] whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere, and the latter is usually done when the issues can be more conveniently tried in the place where the facts arise and the venue belongs."

For another reason of objection, the receiver and creditors most strenuously insist that the doctrine of *res judicata* is a perfect defense to the present application, and that the denial by the Superior Court on January 24th, 1913, of the application of January 11th, 1913, for permission of the applicants to intervene and present their claims for allowance, unappealed from, settled the rights of the applicants once for all. They say that the present application is in substance no more than a renewal of the application then denied. It is, therefore, necessary to examine these applications somewhat closely and in view of the facts of the case. The original application is in substance the ordinary creditors' application for an extension of time in which to intervene, and to submit

his claim to the court for allowance, which means for determination by the court as to its amount and validity, and for an order allowing the claim, so determined, to participate in the assets. The existence of the prior orders of court in the premises was then unknown to the applicants. The statute upon which the claim was based was not adverted to or counted upon, and, under the finding of facts concerning that hearing, does not appear to have had the attention of the court or counsel. Neither the application for, nor the order of, June 25th, 1912, call attention to the statute or its exclusive jurisdictional feature. It does not appear upon the face of the application that the claim is founded upon any judgment whatever. No reference is made to the compromise order, nor does it appear that any report of the conclusion of the litigation had been made to the court. No such report had in fact been made. There is an allegation that the receiver and the claimant had agreed upon the amount due, and that the applicants had no knowledge of the receivership until January 3d, 1913, and that they never had any notice of the limitation for the presentation of claims, and that upon notice of the receivership they proceeded with all diligence to get their claims before the court. It appears clearly enough from all the attendant facts stated in the finding, and indeed by inference in the application itself, that the allegation that the compromise of the claim was done by authority of the receivers, must be construed as a statement of a fact first known to the applicants after the receivers had stated to them on or about January 3d, 1913, that they had conducted the defense, and not as a statement that at the time of the compromise and judgment the applicants knew of the receivership. Upon these facts, the application of January 11th, 1913, can only be regarded as an application of a creditor for an extension of time in which

to intervene and present his claim. As such, it was within the judicial discretion of the court to grant or deny, and it was denied. The effect of the denial is not to be extended beyond the scope of the application, and when, as the finding shows, upon the hearing, and not until then, the applicants were first informed of the orders of court, that information then given, did not enlarge the scope of the application. The applicants, instead of attempting to amend and change the nature of their application, preferred to pass it and bring a new and more specific application setting up their exact claim. The applicants had in fact mistaken the true nature of their claim. They were not then simply creditors holding claims to be liquidated by the court of the receivership, but judgment creditors holding judgments, authorized by the court of the receivership, for claims liquidated by the court which had the power to judicially determine their amount, and which had fully accrued under the statute in question prior to the appointment of the receivers and were therefore at that time valid and existing claims. In denying the applications the court did not pass beyond the scope of the applications, which, through clear mistake of fact—explainable by the very specific directions of the receivers to their counsel in the Arizona suit not to disclose the existence of receivership proceedings—led the applicants to state claims of a very different nature from those they in fact had, or at the time even supposed they had. The pending applications set out the material facts of the Arizona suit, the special condition of the bond under the statute, the pendency of the action at the appointment of the receivers, its defense by the receivers, its postponement from time to time upon the request of the receivers' counsel, the stipulation for judgment, the final judgment authorized and agreed to by the receivers, that the receivers had not

reported said judgment to the court, and that no distribution of the assets of the Indemnity Company had yet been made. The prayer for relief (including the claim for a preference which has been abandoned) is that the receivers report the claim as evidenced by the Arizona judgment as a claim duly presented and allowed, and that they participate in dividends to general creditors. This is a claim which the court has not had before it, and the denial of such a claim would upon the facts have been a clear abuse of discretion. It is inconceivable that the court could have ignored its own orders and repudiated the judgment resulting from them. The court, in its denial of the application of January 11th, 1913, did not adjudicate the question whether the applicant's claims had been merged in a judgment under such a statute and under such orders of the court and conduct of the receivers that they had become definitely established and allowed claims against the estate in the receiver's hands, requiring only to be reported and listed upon the records of the court of the receivership as allowed claims entitled to participate in the assets. The doctrine of *res judicata* does not apply.

The law with reference to claims arising under this statute was not, in 1912, as well settled as it is at the present time, and the receivers were apparently in good faith attempting to save every point to protect the fund. It appears very clearly from the correspondence between the receivers and their counsel conducting the suits, that during all the time prior to May 23d, 1912, the receivers were negotiating settlement upon the theory that these claims if compromised would be allowed as other compromised claims had been by stipulation agreed to be allowed, and in a letter of April 29th, 1912, said: "If such compromise is made we will expect to be in a position to get the claims al-

lowed by the court for this amount irrespective of the fact that the time limited for presentation has now expired"; and in the same letter estimated the dividend at twenty to forty per cent. It further appears that after negotiations were under way the attitude of the receivers was changed with reference to these claims, and that this change was due to the decision in *People* v. *Metropolitan Surety Co.*, 205 N. Y. 135, 98 N. E. 412, decided April 2d, 1912, and referred to by the receivers in a letter of May 23d, 1912. The decision in this case was construed, and perhaps fairly so, as holding that the claims in the present case had not accrued and become absolute at the time of the institution of the receivership, because the claimants had not recovered any judgment before the appointment of the receivers, and that under the statute in question, no judgment having been rendered, the claims were contingent, and therefore not properly provable or allowable as against the assets in the receiver's hands. With this idea in view, the receivers were specially careful that the stipulation should not in terms bind the fund in their hands. As tending to support the view of the receivers, it was held in *People* v. *Metropolitan Surety Co.*, 211 N. Y. 107, 105 N. E. 99, that under the statute in question a claim was conditional and not absolute until a judgment establishing the amount and validity of the claim had been obtained and presented to the receivers. Finally, in *Matter of Empire State Surety Co.*, 216 N. Y. 273 (1915), 110 N. E. 610, in a case arising under this same statute, there was, among others, this question certified to the Court of Appeals: "Did the procurement of judgments against the Empire State Surety Company in the United States District Court after the date of the liquidation, to wit, December 16, 1912, in actions regularly begun before that date, entitle the claimants recovering such judg-

ments to share in the assets of said surety company in the hands of the superintendent of insurance as liquidator?" It appears that the superintendent of insurance had rejected these claims as contingent. But the Court of Appeals held that these claims were certain and absolute at the date of the entry of the order of liquidation. The court proceeded to distinguish and explain the decision above referred to in 211 N. Y. page 107, and answered the question certified to it in the affirmative. The facts in the case in 216 N. Y. are, so far as the pendency and institution of the action is concerned, exactly as in the case now under consideration. It is not now claimed that the cause of action of the respective claimants had not accrued at the time of the receivership; but this is apparently because the principle derived from the case in the 205th N. Y. is not now held applicable to a situation like the present, and these cases are referred to rather as probably explaining the action of the receivers back in 1912 and before the legal situation of claimants under this statute had become authoritatively settled. Our own court has since 1912 clearly stated the kind of claims that are to be considered as accrued and not contingent, and therefore capable of presentation to a receiver. *Bridgeport* v. *Ætna Indemnity Co.,* 91 Conn. 197, 99 Atl. 566. It is also to be noticed that the decisions interpreting the Act of Congress in question were all rendered after the appointment of the receivers and after the receivers had undertaken the defense of the Arizona action.

The Superior Court is advised to render judgment for the claimants, directing the receiver to enter and list the claims of the respective claimants for the amounts evidenced by their judgments, upon the list or schedule of claims presented and allowed and entitled to share, according to the nature of the claims, but not as pre-

ferred claims, in the assets which may be in the receiver's hands for distribution.

No costs in favor of either party will be taxed in this court.

In this opinion the other judges concurred.