UNITED STATES of America for the use and benefit of BRYANT ELECTRIC COMPANY, Ltd., Plaintiff-Appellant,

v.

AETNA CASUALTY & SURETY COMPANY and Colonial Construction Company, Ltd., and Sharp Industries, Inc., a Joint Venture a/k/a Colonial Sharp Co., Defendants-Appellees.

No. 42, Docket 27030.

United States Court of Appeals Second Circuit.

Argued Oct. 31, 1961.

Decided Jan. 11, 1962.

---

Julius Zizmor, New York City, for plaintiff-appellant.

John F. O'Connell, of Lord, Day & Lord, New York City (F. Bosley Crowther 3d, of Lord, Day & Lord, New York City, on the brief), for defendants-appellees.

Before CLARK, HINCKS, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Bryant Electric Company, Ltd., use-plaintiff, appeals from an order and judgment dismissing its complaint. Defendant Colonial Sharp Co., a joint venture of Colonial Construction Company, Ltd., a Canadian firm, and Sharp Industries, Inc., a Missouri corporation, was awarded a contract by the United States to construct Stop Gap radar facilities at a United States Air Force Base in Labrador. As a condition of this award, Colonial Sharp furnished a bond under the Miller Act, 40 U.S.C. §§ 270a–270d, executed by defendant Aetna Casualty & Surety Company of Hartford, Conn., guaranteeing payment to all persons supplying labor or material in the prosecution of this Labrador project. Plaintiff Bryant subcontracted with Colonial Sharp Co. to provide the electrical work. Plaintiff alleges that after the execution of this contract it provided Colonial Sharp Co. with extra labor and materials for the project at the agreed price of $17,807.82, and that no part of this amount has been paid. To this complaint, defendants raised several defenses on the merits, together with the defense of want of jurisdiction over the subject matter under the Miller Act. On Colonial Sharp's motion to dismiss for want of jurisdiction the district court found that, since the Miller Act requires all actions instituted under it to be brought "in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere," 40 U.S.C. § 270b (b), and this contract was to be performed in Labrador, the action could not be maintained in the Southern District of New York. Without deciding whether 40 U.S.C. § 270b(b) relates to venue or jurisdiction, the court granted Colonial Sharp's motion to dismiss. D.C.S.D. N.Y., 196 F.Supp. 106.

This appeal requires us to harmonize conflicting provisions of the Miller Act. If the lower court's interpretation is correct, there is no district in the United States wherein this suit may be brought. Since 40 U.S.C. § 270b(b) vests exclusive jurisdiction over suits on Miller Act bonds in the federal courts, there can be no forum whatsoever for such a suit.[1] Thus to follow the lower court's construction would be to render the remedial protections of the statute nugatory for the vast amount of work performed under government contracts abroad.[2] Moreover, it would conflict directly with other provisions of the statute. All contractors, regardless of where their work is to be performed, must post a bond. 40 U.S.C. § 270a. Every subcontractor and materialman not reimbursed for work done under a contract is given an unqualified right to sue on the payment bond. And the statute clearly envisions that overseas work is to be bonded, even if performed beyond the jurisdiction of the United States courts: 40 U.S.C. § 270a(b) provides that the contracting officer may *waive* the requirement of a payment bond for work to be performed in a foreign country if it would be impracticable for the contractor to furnish the bond.[3] There was no such waiver here.

Subsection (b) of § 2 of the Miller Act, 40 U.S.C. § 270b(b), has a long history, and its purpose can best be understood by an examination of that history. The Miller Act was passed in 1935 and superseded the Heard Act, Act of August 13, 1894, ch. 280, 28 Stat. 278. Originally the Heard Act provided for one bond which was held to be for the protection of the United States and those furnishing labor or materials for the prosecution of the work. Under this provision subcontractors shared pro rata with the United States. See United States v. American Surety Co. of New York, 1 Cir., 135 F. 78. The Act was amended in 1905 to clarify its provisions and strengthen the position of the government. Act of Feb. 24, 1905, 33 Stat. 811. The amendment provided for a single bond covering both the contrac-

1. State courts have consistently refused to entertain suits against sureties who have executed bonds under the Miller Act. E. g., Pierce Contractors, Inc. v. Peerless Cas. Co., 81 So.2d 747 (Fla.1955); Gardner v. Roberts-Nash Const. Corp., Sup., 104 N.Y.S.2d 657; Alleva v. Maryland Cas. Co., 248 App.Div. 599, 287 N.Y.S. 583; Macdonald v. Aetna Indemnity Co., 93 Conn. 165, 105 A. 470. This refusal is not limited to direct actions on the bond; it extends to suits brought by the subcontractor as a claimant in the receivership of the surety. People v. Metropolitan Surety Co., 211 N.Y. 107, 105 N.E. 99, rehearing denied 212 N.Y. 551, 106 N.E. 1038.

The language of § 270b(b) is unequivocal; actions are to be brought in the United States District Court for the district of performance "and not elsewhere." Cases decided prior to the passage of the Miller Act interpreted substantially similar language in the Heard Act to bar state suits, Alleva v. Maryland Cas. Co., supra, 248 App.Div. 599, 287 N.Y.S. 583, and there is no reason why the current statute should be given a different construction.

2. In 1958 the Department of Defense alone had $2 891,000,000 worth of con-struction in progress throughout the world. Of this, $812,000,000—more than 28%—was located in a foreign country. This figure represents only a part of total United States Government contractual activity carried on beyond the jurisdiction of the United States courts. Statistical Abstract of the United States, 1959, U. S. Dept. of Commerce, Bureau of the Census, p. 246.

3. The House Committee which reported the Miller Act considered some problems raised by the fact that work would be done on contracts outside the continental United States, although the hearings demonstrate no particular awareness of the jurisdictional problems that might arise. The areas mentioned, however, were United States possessions such as the Philippines, and territories such as Hawaii, which were the chief, if not the sole, extracontinental location of United States construction activity at the time, 1935. Bonds of Contractors on Public Works, Hearings before the Subcommittee on the Judiciary, 74th Cong., 1st Sess., Serial 4, Mar. 8, 22, Apr. 26, May 3, 1935. For an indication of the degree to which government activity has expanded beyond these bounds, see note 2 supra.

tor's obligation to the United States to perform and his liability to persons furnishing labor or materials. For six months after completion or final settlement, the sole right to sue was in the United States; the statute imposed no limitation on where the government might sue. Suppliers of labor and materials could intervene in such a suit and share pro rata in any balance remaining after the United States' claim was satisfied. If no suit were brought by the United States within six months, any creditor could bring suit "in the name of the United States in the circuit court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere." 33 Stat. 812. Only one suit could be brought; all other creditors could intervene and share pro rata in any recovery. Obviously, the single forum was a necessity to this scheme.

The Miller Act worked two basic changes in this arrangement: the contractor was required to post two bonds, one protecting the government against failure to perform, the other protecting the subcontractor. The government, being safeguarded by the performance bond, had no direct interest on the payment bond. Each supplier of labor or material was permitted to institute a separate action to recover his claim; the pro rata provisions were dropped, creating a race among subcontractors until the bond was exhausted.[4]

Although these changes eliminated the basic reasons underlying the limitation of suit to one district court, the provi-

sion was retained. Perhaps reflecting the elimination of its original purpose, as well as a change in scale of government operations, the provision was changed slightly; while the original statute limited suit to one district—*the* district in which the contract was to be performed—the Miller Act expanded the restrictions slightly by stipulating that suit could be brought in *any* district in which performance would occur. Examination of the legislative history provides us with no clear indication as to why the clause was retained in this form. The surety company officials who testified before the House Committee argued for retention of the single creditor's suit, so that they would be spared any risk of paying out more than the amount of the bond.[5] It is clear that they wanted a single suit, not just a single district in which suits would be brought, for they specifically feared that payment of the full amount of the bond in a prior action or actions would not be accepted as a bar to a later suit by another materialman.[6] It is equally clear that Congress did not heed these requests; the House Report envisaged that separate suits would be brought,[7] and the shift from one to several possible districts reduced the chances that suits could be consolidated.[8] Thus the section retained scant utility, save as a convenience to the defendants.

█ The primary aim of the Miller Act was to secure greater protection for the subcontractor. The major changes were designed to streamline the cumbersome Heard Act machinery and to facilitate suit by those supplying labor or

4. H.R.Rep. No. 1263, 74th Cong., 1st Sess. 2 (1935).

5. Bonds of Contractors on Public Works, Hearings before the Subcommittee on the Judiciary, 74th Cong., 1st Sess., Serial 4, Mar. 8, 22, Apr. 26, May 3, 1935, pp. 47–48.

6. Ibid.

7. H.R.Rep. No. 1263, 74th Cong., 1st Sess. 2 (1935).

8. 40 U.S.C. § 270b(b) was amended in 1959 to change the manner of comput-
ing the time limit on suit. At that time the performance-district limitation was re-enacted. Act of Aug. 4, 1959, 73 Stat. 279. Congress was solely concerned with relieving the Comptroller General of the responsibility of determining when a contract was finally settled. Sen.Rep. No. 551, 86th Cong., 1st Sess. (1959), U.S.Code Cong. & Adm.News 1959, p. 1995. Thus we cannot attribute to this amendment any effect on the status or meaning of the performance-district limitation clause.

materials to the general contractor. It would be ironic indeed to find in those amendments a provision which in today's world would scuttle a major part of the bonding scheme. For that would be the result of accepting defendant's construction; with no forum for enforcement, the bond becomes an empty gesture, a stately farce carried out by contractors and sureties, at the public expense, and to the detriment of the very class the Miller Act was designed to protect. We cannot accept a construction which would lead to such a result.

■ It is clear that the parties to this bonding transaction—government, contractor, and surety—did not originally accept the construction now urged. Else why would the government have required a worthless bond, the contractors have executed a worthless bond, and the surety company have guaranteed an obligation for which they knew they could never be held to task? Nor are we constrained to accept the reading now offered by defendants. The purpose of the Miller Act was clearly to provide a forum for all unpaid subcontractors. The literal wording of the Miller Act cannot be invoked to defeat its manifest purpose. Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 153 F.2d 527, 530, and cases cited.

■ We must therefore read the limit of § 270b(b) on the place of suit as *pro tanto* inapplicable in those instances in which there exists no United States judicial district wherein the contract is to be performed. Since we find the section inapplicable in so far as it restricts suit to the performance district, it is immaterial for purposes of this case whether this section be considered a venue requirement, thereby waivable, or a jurisdictional limitation. Compare Texas Const. Co. v. United States for the Use of Caldwell Foundry and Machine Co., 5 Cir., 236 F.2d 138, certiorari de-

nied 350 U.S. 895, 76 S.Ct. 154, 100 L.Ed. 787; United States to Use and Benefit of Bailey-Lewis-Williams of Florida, Inc. v. Peter Kiewit Sons Co. of Canada Limited, D.C.D.C., 195 F.Supp. 752, with United States for the Use and Benefit of Fairbanks Morse & Co. v. Bero Const. Corp., D.C.S.D.N.Y., 148 F.Supp. 295.

While 40 U.S.C. § 270b(b) is inapplicable in this case, jurisdiction is rightly founded on 28 U.S.C. § 1352, which gives the district court jurisdiction over all suits on bonds executed under a law of the United States. See United States for the Use of General Accident Fire and Life Assur. Corp. v. Maguire Homes, Inc., D.C.Mass., 186 F.Supp. 659. See also 1 Moore's Federal Practice ¶ 0.60 [8–3], p. 626 (2d Ed. 1960).[9]

■ With jurisdiction based on 28 U.S.C. § 1352, the general venue statute (28 U.S.C. § 1391) would be applicable. The record does not present sufficient information for a determination whether or not venue is properly laid in the Southern District of New York under this section. But we do not reach this question, since it is quite clear that the issue is not before us. Aetna has answered raising defenses on the merits and to subject matter jurisdiction under the Miller Act, while the other defendants have moved to dismiss on the latter ground only. Objection to improper venue is only a waivable defense, lost by failure to "interpose timely and sufficient objection." 28 U.S.C. § 1406(b); F.R. 12(g) and (h); Panama R. Co. v. Johnson, 264 U.S. 375, 385, 44 S.Ct. 391, 68 L.Ed. 748; Lee v. Chesapeake & O. R. Co., 260 U.S. 653, 655, 43 S.Ct. 230, 67 L.Ed. 443; Freeman v. Bee Machine Co., 319 U.S. 448, 452, 63 S.Ct. 1146, 87 L. Ed. 1509; Drabik v. Murphy, 2 Cir., 246 F.2d 408. Here no objection, timely or otherwise, has been interposed on this issue; it is therefore waived.

Reversed and remanded.

9. That is not to say that we read 28 U.S.C. § 1352, which gives federal courts jurisdiction on such bonds concurrently with state courts, as thus authorizing suit on

Miller Act bonds in state courts. To the degree that it established an exclusive federal forum, 40 U.S.C. § 270b(b) remains applicable.